## LEWIS v. HERSHEY, ADMINISTRATOR.

[No. 6,585.    Filed January 4, 1910.]

1. BASTARDY.—*Title to Money Recovered.*—*Parent and Child.*—The money recovered in a bastardy proceeding belongs to the child and must be used for its benefit.  p. 106.

2. BASTARDY.—*Recovery for.*—*Use of Money.*—*Trusts.*—Money can be recovered in a bastardy case only for the support of the child, and the mother ordinarily becomes its trustee for the use of the child.  p. 106.

3. BASTARDY.—*Recovery for.*—*Trusts.*—*Notice.*—One who knowingly borrows money recovered in a bastardy case thereby becomes a trustee of such money, and is liable to such child.  p. 106.

4. BASTARDY.—*Recovery.*—*Rights of Child.*—An illegitimate child, by its next friend, may maintain an action for money recovered for its benefit and improperly used.  p. 107.

5. TRUSTS.—*Limitation of Actions.*—*Bastardy.*—*Money Recovered.*—Where the father of a daughter who recovered a sum of money in a bastardy case, borrowed such money, knowing of such recovery, he thereby becomes a trustee of such money, and the statute of limitations does not begin to run against an action therefor by such child until after his clear and unequivocal repudiation of such trust.  p. 108.

6. LIMITATION OF ACTIONS.—*Infants.*—*Statutes.*—Infants have two years after attaining twenty-one years of age in which to maintain actions which would ordinarily have been barred (§298 Burns 1908, §296 R. S. 1881), and if the defendant dies during such two-year period, the time is extended eighteen months from the time of death, less the unexpired portion of such two-year period (§300 Burns 1908, §298 R. S. 1881).  p. 109.

7. BASTARDY.—*Trusts.*—*Interest.*—*Parent and Child.*—One who knowingly borrows money recovered for, and belonging to, a bastard child, and who commingles such money with his own, for his own use, is liable for such money and interest thereon, but where

such child was a member of the borrower's family, interest will be computed from the time such child ceased to be a member of the family.  p. 109.

8.  PARENT AND CHILD.—*Grandparents.*—*Grandchildren.*—*Services.* —In the absence of a contract a grandparent is not entitled to compensation for caring for his grandchild who is a member of his family.  p. 110.

From Tippecanoe Circuit Court; *R. P. De Hart,* Judge.

Action by Mattie Lewis against William H. Hershey, as administrator of the estate of Daniel Buck, deceased. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Haywood & Burnett,* for appellant.
*Caldwell & Caldwell,* for appellee.

WATSON, J.—The plaintiff filed her claim against the estate of said decedent for $390 and interest thereon from January 9, 1885, alleging in the first paragraph that said sum was lent to said decedent by Lucy Buck, mother of claimant, on said date; that Lucy Buck died on December 22, 1886, and no administration was had on her estate; that said sum is due and unpaid. The second paragraph alleges that Lucy Buck, mother of claimant, departed this life December 22, 1886, leaving claimant as the sole heir; that no administration was had on said decedent's estate; that, at the time of her death, Daniel Buck, now deceased, was indebted to her in the sum of $390 for money had and received; that said Daniel Buck thereby became indebted to this claimant for said sum of $390 and interest. Both paragraphs allege that claimant became twenty-one years old on January 11, 1904, and that Daniel Buck died on June —, 1905. To the first paragraph appellee filed a set-off, alleging that claimant was indebted to the estate in the sum of $50, funeral expenses of Lucy Buck, and $25, medical bill for her last illness, both having been paid by Daniel Buck, deceased. The cause was tried by the court, a finding made for appellee, on which judgment was rendered, from which this appeal is prosecuted.

The record disclosed that claimant is an illegitimate child, and for her maintenance and support her mother, Lucy Buck, instituted a bastardy proceeding against Edwin Dill, and on October 29, 1883, she recovered judgment against said Dill for $500; that out of said $500 she paid her attorneys $100, and turned over to her father, Daniel Buck, $390, no part of which was ever paid to either Lucy Buck or to claimant. This claim is predicated and was tried on the theory that money so received belonged to Lucy Buck, deceased, and it was necessary to show that this claimant's rights, if any, came by reason of being the heir of decedent. Bastardy proceedings, under our statute, are for the maintenance and support of the child so unfortunate as to be thus born, and for no other purpose. True it is that the money is paid over to the mother, but it is for the support and maintenance of her bastard child. *Beeman* v. *State, ex rel.* (1839), 5 Blackf. 165; *Hunter* v. *State, ex rel.* (1843), 6 Blackf. 383; *Marlett* v. *Wilson's Executor* (1868), 30 Ind. 240; *Canfield* v. *State, ex rel.* (1877), 56 Ind. 168.

If the child be still-born, then there can be no recovery for support. *Canfield* v. *State, ex rel., supra.* It is also true, that if the bastard child should die after judgment had been rendered, on a showing of this fact to the court rendering judgment and before the expiration of the time limited for the payment of said judgment, the court may make such reduction thereof as is just. §1031 Burns 1908, §996 R. S. 1881. The mother becomes the trustee of the money so received for her infant child, unless "she be dead or an improper person to receive the same." §1027 Burns 1908, §992 R. S. 1881.

It is shown by one of the attorneys for the relatrix in the bastardy proceedings that Lucy Buck and Daniel Buck had some kind of an understanding or agreement as to this money, and thereafter Lucy Buck gave a check on the Fowler-Chase Bank to Daniel Buck for $390 of the money so received by her in said proceedings, and said

Daniel Buck indorsed said check and received said $390. Decedent took this money under an arrangement between himself and Lucy Buck, the mother of claimant, "whereby the father wanted to take Lucy's money and keep it, or use it for her, or keep it for her, and use it in the purchase of land." He thereby became the trustee of said $390 for said claimant, instead of for her mother, and for which his estate is liable.

Unlike many cases, where the question as to whether a trust exists, the money over which this dispute arose was trust money, created so by statute, regardless of whether the mother or grandfather held it. This is certainly true, when he took it, as he did, with full knowledge of the facts as to the source from whence it came. He was merely the custodian of the money. *Kane* v. *Bloodgood* (1823), 7 Johns. Ch. 90, 11 Am. Dec. 417; *Brown* v. *Maplewood Cemetery Assn.* (1902), 85 Minn. 498, 89 N. W. 872; *Taylor* v. *Benham* (1847), 5 How. (U. S.) *233, 12 L. Ed. 130. In the case of *Kane* v. *Bloodgood, supra,* Chancellor Kent said: "Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust."

This claimant, by a next friend, prior to becoming twenty-one years of age, could have recovered this money from decedent. In the case of *State, ex rel.,* v. *Christian* 4. (1897), 18 Ind. App. 11, May Cecil, a bastard child of fifteen years of age, instituted the action to recover the $400 that had theretofore been recovered by her mother, Martha Knapp, from Samuel K. Cecil, who was adjudged her father, and said sum was recovered in said proceedings from him for her support and maintenance. The money was paid to the clerk of the Delaware Circuit Court by said putative father and Archibald Knapp, who was wrongfully given a certificate, showing him to be the guardian of May

Cecil, by defendant Christian as clerk of the Hamilton Circuit Court, when, in fact, no such appointment had been made. The court held the complaint good, and that she was the proper relatrix.

It is insisted that this action should have been brought within six years from the date Daniel Buck received the money, and that the same is barred by the statute of limitations. The fact disclosed by this record made Daniel Buck trustee of the funds so received by him, and the trust a continuing one. The rule is that the statute of limitations will not begin to run until the trustee has repudiated his trust. That money due to a ward and held by a trustee is permitted to remain in the trustee's hands does not change the nature of the debt nor bar the beneficiary. In other words, in order that the statute of limitations may begin to run and be available the repudiation of the trust must be clear and unequivocal. *Raymond* v. *Simonson* (1835), 4 Blackf. 77; *Thomas* v. *Merry* (1888), 113 Ind. 83; *Jones* v. *Henderson* (1898), 149 Ind. 458; *Stanley's Estate* v. *Pence* (1903), 160 Ind. 636; *Speidel* v. *Henrici* (1887), 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; *Chicago, etc., R. Co.* v. *Hay* (1887), 119 Ill. 493, 10 N. E. 29; 2 Perry, Trusts (5th ed.), §§863-865.

No repudiation or disavowal of his trust having been made by Daniel Buck, the statute of limitations did not begin to operate against the right of this claimant to recover her money so held in trust.

But assuming that the statute of limitations did operate against the claimant in this case, and did run during her minority, she had two years after the removal of her legal disability within which to bring this action. §298 Burns 1908, §296 R. S. 1881; *Bryson* v. *Collmer* (1904), 33 Ind. App. 494; *Barnett* v. *Harshbarger* (1886), 105 Ind. 410; *Sims* v. *Gay* (1887), 109 Ind. 501; *King* v. *Carmichael* (1893), 136 Ind. 20, 43 Am. St. 303.

Claimant became twenty-one years old on January 11, 1904, and filed this action March 17, 1906. Daniel Buck, the trustee, died June —, 1905. By §300 Burns 1908, §298 R. S. 1881, the time for the bringing of this action was, by his death, thus extended the difference between the eighteen months and the unexpired portion of the two years' additional time allowed by statute after her legal disability had been removed, which shows that by virtue of the statute, the claim would have been filed in time if the statute of limitations applied. §300, *supra; McNear* v. *Roberson* (1895), 12 Ind. App. 87; *Harris* v. *Rice* (1879), 66 Ind. 267; *Knippenberg* v. *Morris* (1881), 80 Ind. 540.

The evidence shows that the trustee used the money and commingled it with his own for his own profit. Under such circumstances, as a general rule, he would be required to account for interest at the legal rate, as provided by §7952 Burns 1908, §5200 R. S. 1881, which is as follows: "On money had and received for the use of another, and retained without his consent, interest shall be allowed at the rate of $6 a year on $100." In the case of *Stanley's Estate* v. *Pence, supra*, the court said: "As a general rule, in the absence of anything to the contrary, the question of requiring a trustee to pay interest on the trust funds is one which must depend upon the facts and circumstances in each particular case; and where good conscience requires that the trustee be charged with interest, the payment thereof ought to be exacted. *Miller* v. *Billingsly* [1873], 41 Ind. 489; *Pittsburgh, etc., R. Co.* v. *Swinney* [1884], 97 Ind. 586." In this case it is shown the claimant grew up to womanhood in her grandfather's home, as a member of his family. It is therefore equitable and just that this estate should be liable for interest from the date of her marriage only, the time she ceased to be a member of his family.

It is claimed by appellee that even though decedent re-

ceived the money, he was entitled to it for the support and maintenance of claimant. The record discloses the fact that the claimant and decedent sustained the relation of granddaughter and grandfather to each other; that she lived with her grandfather from her birth until her marriage, as a member of his family, he furnishing board and clothing, and she, on the other hand, rendering services, even to working in the field. Therefore the presumption arises that the necessities and comforts of life so furnished by the grandfather and the services so rendered by the granddaughter were intended as mutual acts of kindness, and were gratuitously furnished and done. In the case of *James* v. *Gillen* (1892), 3 Ind. App. 472, the court said: "It is the policy of the law to inculcate harmony, confidence and affection in the domestic relation, and this can better be accomplished by permitting the sense of filial regard, in a large measure, to regulate the hearthstone economy, than by reducing it to a mercenary basis by applying the rules relating to master and servant. The doctrine applies with peculiar force to parent and child, and those occupying that relation by arrangement or adoption, and continues as long as the relation exists, regardless of the age of the parties. *Davis* v. *Davis* [1882], 85 Ind. 157; *Smith* v. *Denman* [1874], 48 Ind. 65; *Hays* v. *McConnell* [1873], 42 Ind. 285." This is true, regardless of the consanguinity or affinity, when the parties live together as one common family, as in this case. *James* v. *Gillen, supra; Collins* v. *Williams* (1898), 21 Ind. App. 227.

The judgment is reversed and cause remanded, with instructions to the trial court to sustain the motion for a new trial, and to proceed in this cause consistently with this opinion.