## OPP *v.* DAVIS.

[No. 19,621. Filed January 23, 1962. Rehearing denied March 21, 1962. Transfer denied May 14, 1962.]

*Wilbur A. Royse,* and *Lawrence Turner, Jr.,* both of Indianapolis, for appellant.

*Gordon Davis,* and *Albert Ewbank,* both of Indianapolis, for appellee.

KELLEY, P. J.—Appellant was adjudged by the Juvenile Court of Marion County to be the father of three children born out of wedlock to appellee. The adjudication resulted from the filing by appellee in said court, and the consequent hearing thereon, of three petitions charging appellant with the fatherhood of a girl born January 14, 1959, and twins, a boy and a girl, born February 26, 1960. Said petitions

were consolidated for hearing and evidence was presented by both parties on the issues raised by said petitions and appellant's answers in denial thereof. The court, without jury, found appellant to be the father of said children and, by separate judgment on each petition, adjudged that appellee recover of appellant for pre-natal, post-natal, birth care, attorney fees, and support of said children, the total of which on all three judgments is $668.44 for pre-natal, post-natal, and birth care; $510.00 for attorney fees; and $6.00 per week for support of each child.

As provided for in §3-640, Burns' 1946 Replacement, appellant duly filed his motion for a "new hearing," containing eight (8) specifications or grounds therefor, and a supporting affidavit as a part of said motion, which motion was overruled by the court. The assigned error is the overruling by the court of said motion for a new hearing.

The case, on appeal, is fraught with difficulty which apparently arises out of the change in phraseology and purpose found in said §3-640, Burns' 1946 Replacement, and §3-623 thereof, being §§1 and 18, ch. 112, Acts 1941, from the phraseology employed in the prior act of 2 R. S. 1852, §§1 to 22, inclusive, as amended, which were formerly designated as §§3-601 to 3-622, Burns' Anno. Sts. The said sections of the latter mentioned act were repealed by §35 of ch. 112, Acts 1941. The former act, now repealed, was commonly referred to as the "bastardy" act, and in *Saint* v. *The State ex rel. Hosier* (1879), 68 Ind. 128, it was held to be a "civil proceeding" and that "new trials" could be granted as in other civil cases. The proceedings thereunder were initiated before a "justice of the peace" by "any

woman" who has been delivered of, or is pregnant with, a "bastard" child.

It may be fair to say that the commonly known opprobrium which unfailingly attached to the defenseless children born as such "bastard" children, and which frequently attached to innocent, but love-laden and deceived, young girls, and often attached to guiltless, but designed upon, males, exerted a motivating influence for the enactment of said ch. 112 of the Acts of 1941, which, as before stated, repealed the old "bastardy" act in toto, and also enacted more adequate provisions for the protection of such children and relaxed the rigid code rules of trial procedure which prevailed under the old act of 1852. The whole act, 1941, evinces a consciousness by the Legislature of the fact, as stated by our Supreme Court, that cases of this type, as in juvenile cases, present problems that are "social rather than legal." Quotation from *State ex rel. Gannon* v. *Lake Circuit Court et al.* (1945), 223 Ind. 375, 385, 61 N. E. 2d 168.

Among others, the act of 1941 contains a pronounced change relative to the presentation after the hearing of matters and occurrences during the hearing which may have an influential effect on the result reached or which may have served to deprive the party or parties of a fair hearing. Under the old act of 1852, as interpreted by the Supreme Court in the *Saint* v. *State* case, *supra,* there existed only the right to a "new trial" upon the several grounds therefor provided by the code, §2-2401, Burns' 1946 Replacement, the motion for which was required to be filed within thirty (30) days from the time the verdict or decision was rendered, §2-2403, Burns' 1946 Replacement. Under the 1941 act, however, all this was changed and it is provided that the "ag-

grieved" party may file a motion for a "new hearing" and that the same be filed within ten (10) days after the "finding" or verdict. No grounds for such motion are prescribed by the act. Consonant, also, with the evident legislative intent to cast these proceedings in a cloak of respectability free from "scourge of the tongue" (Job 5:21), it is provided in §3-638, Burns' 1946 Replacement, that "The court shall exclude the general public from the hearing."

The phases of the 1941 act to which we have made reference, together with others that could be mentioned, can lead only to the logical legal conclusion that by the new act of 1941 the legislature sought to wipe out the apparent social inequities of the old act and relax the strict, formal, and rigid rules of trial and grounds for new trial which prevailed under judicial construction of the former act. It is to be noted, also, that the 1941 act in no part thereof provides for a "trial", with its usual legal connotations. Throughout, it provides only for a "hearing." It is a rule of statutory construction that a change of phraseology from that of the original act "will raise the presumption that a change of meaning was also intended." *Chism et al.* v. *State of Indiana* (1932), 203 Ind. 241, 244, 179 N. E. 718. In changing the provisions of the old act, which had been interpreted by the courts to require a formal trial and a motion for new trial for purposes of a review of the proceedings, to that of a hearing and motion for a new hearing of such proceedings, there can be no more than fragmentary doubt that the end sought thereby was to afford the greatest reasonable latitude in paternity proceedings for the ascertainment of the truth of the accusation made and the

consequent protection and welfare of the guiltless children.

These observations supply a guide to consideration of the matters posed by this appeal. The evidence is of such nature as not to be worthy of delineation nor would a resume thereof serve any beneficial purpose herein. It appears that the month of conception of the first child was May, 1958, and the month of conception of the twin children was June, 1959. The accuracy of these stated conception times with reference to the normal period of gestation is not referred to in the evidence and would be without influence except when considered in connection with the grounds set forth in appellant's motion for a new hearing and the record admission by appellee that she was at one time convicted of prostitution.

At the conclusion of the direct and cross-examination of appellant, the court granted appellant's request for time in which to locate additional witnesses and continued the hearing to September 30, 1960. On the latter day the cause was again continued to October 20, 1960, by reason of want of service of subpoena on the additional witnesses for the defense. On said October 20, 1960, appellant made showing of the service of the subpoena on five named male persons. Three of the five appeared and testified they had no sexual relations with appellee. The court refused to permit examination by appellant of said witnesses as to previous statements contrary to their present testimony on the ground that such examination constituted attempted impeachment of the witnesses without a foundation first laid. Objections to other questions put to the witnesses were sustained on the ground that they were not specific as to time and place.

Appellant's counsel informed the court that the two persons subpoenaed but who failed to appear for the hearing had told appellant that they would not "show up". After the examination of the three males who did appear, counsel for appellant stated to the court that "that is all the witnesses we have unless the court wants to do something about the two missing witnesses." The court then stated:

"I will do something but that is in the nature of contempt proceedings and I have issued warrants for their arrest and production in court."

Counsel then rested appellant's case.

Appellant's motion for a new hearing asserts that he was denied a fair hearing in that the court did not grant time for the appearance of the two missing witnesses; that the decision is contrary to law in that the court did not permit sufficient latitude for him to lay a foundation for the impeachment of said witnesses, and refused the use of leading questions directed to the "obvious surprise and hostile" witnesses; and that there was newly discovered evidence which appellant could not, with reasonable diligence, have discovered and produced at the hearing. In support of the latter assertion, an affidavit of appellant and his counsel was attached to and made a part of the motion for a new hearing. Said affidavit alleged, in substance, that one Waddell Davis, one of the said three witnesses who appeared and testified after subpoena, as before stated, was confronted by said affiants after the hearing at which he made statements contrary to his prior statement to affiants and he then told affiants that he had had sexual relations with appellee in the period from April 1958, and June 1959; that one James Taylor, another of said three witnesses who were subpoenaed, had told him that

he, the said James Taylor, had sexual relations with appellee during the critical period; and that Austin Williamson, another of said witnesses who were sub-. poenaed, had "lied like a dog" in his testimony.

Said affidavit further alleged that said affiants had a conversation with one Arvie Lee Taylor and that she told affiants that appellee was a heavy drinker and had many men callers at all hours of the day and night; that among said male callers on appellee were Waddell Davis, Austin Williamson, Irving Farley, and James Taylor; that she found said Irving Farley in bed with appellee on one occasion and the latter had no clothes on "except a print dress, which dress was around her bosom." It is further alleged in said affidavit that appellant had a conversation with one George Yates, one Stanely Spears, one ——— Derring, whose true christian name is unknown, one Bill Logan, one Barlow Karcher, and one John Doe, whose true name is unknown, and that each of them admitted to have had sexual relations with appellee. It is further alleged in said affidavit that appellant was told by said Waddell Davis that one Junior Law, one Justin Johnson and one Dick Johnson each had sexual relations with appellee during the critical period.

The record discloses no counter affidavit by appellee and no denial by her of the allegations made in said affidavit. Tested by the strict and formal rules which may have application to a motion for new trial under the code in civil actions, the affidavit herein referred to may be subject to closer scrutiny. However, as we have before remarked, the more liberal aspects seemingly assumed by the 1941 act for the ascertainment of the truth in the social problems tendered thereunder would seem to authorize, under the circumstances here made apparent by the record before us

and the uncontradicted statements found in said affidavit, a more extended inquiry and endeavor by the court as to the truth or falsity of the matters asserted. It would most certainly be difficult upon the record as to the admitted character of appellee and if there be accurate substance to the allegations made in said affidavit, to sort out appellant as the father of said children without a more reliable method of designation than the mere statement of appellee that said appellant was the father. Apparently to meet just such situations, the legislature enacted provisions for a blood test of the mother, the children, and the person alleged to be the father "to determine whether or not the defendant can be excluded as being the father of the child." See §3-658, Burns' 1961 Cum. Suppl. The record does not disclose that such blood test was made in this case, although the record here seems such as to not only justify but to render essential the making of such a test.

The evidence in the case at hand reveals an entirely different essential and determinative fact than that considered by the court in *Barkey* v. *Stowell* (1947), 117 Ind. App. 162, 166, 70 N. E. 2d 430, cited and relied upon by appellee. In that case the court, in its delineation of the evidence, set forth that "she [the appellee] had no intercourse with any other person in 1942 or at any other time — except the two occasions mentioned [with appellant], and there is no evidence in the record to contradict her testimony upon this point." (Bracketed words are ours for clarity). The record in the instant case reflects the admission of the appellee that she had been previously convicted of prostitution and that she had been previously convicted of assault and battery.

The fact that appellant engaged in sexual intercourse with appellee around the critical period does not, of itself, under the circumstances and inferences demonstrated by the record herein, conclusively establish substantial evidence of probative value, *Vonville* v. *Dexter* (1948), 118 Ind. App. 187, 76 N. E. 2d 856, on petition for rehearing, 118 Ind. App. 207, 208, 77 N. E. 2d 759, 760, that appellant was the father of said children. The ultimate finding and decision of the paternity must, of course, rest with the juvenile court. But because of the intimate nature of paternity cases such as this and the almost uncontrovertible ease with which a male may be charged with and found to be the father of an illegitimate child, it seems requisite, in cases such as the present where there exists inferences of access by others than the accused, that such finding should be predicated upon something more than conjecture, chance, or the mere opinion of the mother that the person charged is the father.

In our opinion the unchallenged and undenied allegations contained in the said affidavit attached to and made a part of appellant's motion for a new hearing, were sufficient to warrant the court to open the case and hear any additional evidence having a bearing upon whether others than appellant may have had sexual relations with appellee during the period in which conception could have taken place. It is not our prerogative to order, direct, or, perhaps, even to suggest that either or both of the parties hereto take advantage of the provisions of said §3-658, Burns' 1961 Cum. Suppl., for scientific contribution to the herein disputed issue, but we may observe that such action would be no

doubt of much assistance to the court in its solution of this precarious matter.

The extreme difficulty the court must have experienced in the hearing of this cause is evident from the record here exposed. However, we are convinced, when the entire case, as presented by that same record, is examined and considered as a whole and as presenting a social problem rather than a legal one, within the intent and purpose of the said 1941 act, that all the suggested avenues affecting the attributed parental status of the appellant have not been sufficiently exhausted to warrant a conclusive finding that he is the father of the involved children.

For the reasons stated, the judgment is reversed with instructions to sustain appellant's motion for a new hearing and for further proceedings.

Bierly, Gonas and Pfaff, JJ., concur.

## On Petition for Rehearing

Kelley, P. J.—Appellee's Petition for Rehearing consists of thirteen (13) specifications. The appellant filed his motion to dismiss said rehearing petition on the ground that the same does not comply with the provision of Rule 2-22 of the rules of the Supreme Court that:

> "Applications for a rehearing of any cause shall be made by petition, separate from the briefs, . . . *stating concisely the reasons* why the decision is thought to be erroneous." (Our emphasis).

It is appellant's contention that twelve of said specifications consist of appellee's conclusion that quoted statements of our opinion are erroneous but that none of said specifications states the "reason" why such portions of the opinion are erroneous, as required by said Rule 2-22.

In *Automobile Underwriters, Inc.* v. *Smith* (1961), 241 Ind. 302, 171 N. E. 2d 823, on page 825, the Supreme Court said:

"Under the above rule, alleged errors in the opinion, which are assigned as cause or grounds for rehearing, must be supported by a ■ statement which concisely states '*the reasons why* the decision is thought to be erroneous.' Rule 2-22. The rule contemplates that, in this manner, the court shall be aided in its consideration of the petition. Consistent with the purpose of the rule, *alleged errors* in the opinion, *not supported by a concise statement of the reasons in support thereof*, are considered waived. . . ." (Emphasis supplied).

In her memo on appellant's motion to dismiss the rehearing petition, appellee, after an expression as to specifications 5, 6 and 7 and how specification 9 is amplified by specifications 8 and 10 and specification 12 is amplified by specification 13, says: "Thus even if this court should determine that the alleged error made by certain statements in the opinion and decision of this court are not properly in compliance with Rule 2-22, this Court has before it specifications numbers 1, 2, 3, 4, 9, 11, and 13 which do sufficiently comply with the Rule . . . ." We are of the opinion that specifications 5, 6, 7, 8, 10, and 12 are insufficient to meet the requirements of Rule 2-22.

It therefore becomes necessary only to consider and determine upon the sufficiency of the remaining specifications. We shall consider them in numerical order.

1. This specification asserts that we erroneously decided a "new and novel question of law" as to what constitutes a petition for a "New Hearing" under the statute. Burns' 3-640. No reason is given as to why the decision on the referred to question is claimed to

be "new" or "novel" nor why appellee thinks it to be "erroneous."

Specifications 2 and 3 are to the same practical effect and may be considered together. By these specifications appellee says we erred in stating that the provisions of the Civil Code, as to motions for a new trial, do not apply to Juvenile Court matters or to motions for a New Hearing under Burns' §3-640. No reasons are given or stated which indicate why or in what way we erred, as asserted. Specifications 2 and 3 are insufficient to comply with the requisites of said Rule 2-22.

Specification 4 asserts that our opinion contravenes the "ruling precedents" as "announced" by certain cited cases decided by this court. What the "ruling precedents" were that we are alleged to have contravened are not stated. This specification fails to meet the requirement of said Rule 2-22 and, furthermore, fails to show any contravention by us of any ruling precedent.

Specification 9 charges that we erred in our opinion by "granting the greatest latitude in paternity procedure to extend in favor of the putative father" who never denied the charge and held as "against the consequent protection and welfare of the guiltless children." The foregoing statement is but the conclusion of appellee herself and no parts of our opinion which appellee may think supports said conclusion are cited, referred to or quoted. Appellee's said self-assumed conclusion as to the construction and interpretation to be given our opinion does not constitute a concise reason why our opinion is thought to be erroneous within the meaning of said Rule 2-22. It is clear that this specification does not comply with said Rule 2-22.

Appellee's specification 11, in effect, states that we erroneously held that the legislature having enacted the provision for a blood test in paternity cases, §3-658, Burns' 1961 Cumulative Supplement, the record in this case seems to not only justify, but render essential, the making of such a test, whereas the said statute provides for such a test "only upon the motion of either of the parties"; and that we do not have the power *sua sponte* to make such an order. We make no such holding and we did not "sua sponte," or otherwise, make any such order. In our opinion we stated:

> "The record does not disclose that such blood test was made in this case, although the record here seems such as to not only justify but to render essential the making of such a test. . . . It is not our prerogative to order, direct, or, perhaps, even to suggest that either or both of the parties hereto take advantage of the provisions of said §3-658, Burns' 1961 Cum. Suppl., for scientific contribution to the herein disputed issue, but we may observe that such action would be no doubt of much assistance to the court in its solution of this precarious matter."

Although, with a rather broad view of the rule, it may be loosely stated that this specification 11 could be said to fall within the requirement of said Rule 2-22, yet it does not accurately allege or specify our true holding, as we have above demonstrated. It follows that this specification furnishes no ground for a rehearing.

Specification 13 is long and indefinite. It does not charge that we erred in anything or that our opinion was erroneous for any reason. Since we are not here charged with any error or erroneous ruling, nor are any concise reasons given by which "the court shall be aided in its consideration of the petition" (*Auto-*

*mobile Underwriter's, Inc.* v. *Smith, supra*), we are forced to conclude that this specification 11 does not comply with said Rule 2-22.

Having considered the various specifications of appellee's petition for a rehearing, we are of the opinion that only specification 11 in any way or manner tends to comply with said Rule 2-22 and that said specification furnishes no ground for granting a rehearing.

For the reasons above expressed, we must hold, in accordance with the holding in said *Automobile Underwriters, Inc.* v. *Smith, supra,* that specifications 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12 and 13 of appellee's said petition for a rehearing "are considered waived" and present no ground for a rehearing. As to said specification 11, appellant's motion to dismiss is denied.

Appellee's petition for a rehearing, predicated upon the remaining specification 11, is denied.

NOTE.—Reported in 179 N. E. 2d 298. Rehearing denied 180 N. E. 2d 788.