Richard G. POTTER and Josephine G. Potter, Appellants,

v.

CONNECTICUT MUTUAL LIFE INSURANCE COMPANY et al., Appellees.

Court of Appeals of Kentucky.

Oct. 26, 1962.

Wilson W. Wyatt, Robert L. Maddox, Jr., H. Wendell Cherry, Wyatt, Grafton & Sloss, Louisville, for appellants.

Thomas W. Bullitt, Edwin T. Schaeffer, Jr., Bullitt, Dawson & Tarrant, Louisville, Edward J. Gurney, Winter Park, Fla., for appellees.

PALMORE, Judge.

This case involves the running of limitations, despite the alleged saving effect of KRS 413.340, when a trustee purports to hold under a trust arrangement inconsistent with the right of immediate and exclusive possession theretofore vested in some of the beneficiaries of the purported trust.

By a will probated in 1928 Charles Potter left a substantial estate to his widow, Ruth Potter, "for and during her natural life, she to use the income therefrom, and so much of the principal as seems necessary for her comfort," with remainder upon her death to their two children Josephine and Richard (the appellants). In 1934 Ruth Potter, using funds of this estate, as she had a right to do pursuant to a provision of the will giving

her an absolute power of sale and disposition during her life, purchased certain 10-year endowment policies from the appellee Connecticut Mutual Life Insurance Company. The proceeds of these were payable to Ruth Potter at their maturity or, if she should die before that time, to the children, Josephine and Richard, subject to alternative provisions not now relevant.

In 1938 Ruth Potter and Connecticut Mutual entered into an agreement, terminable by her upon written application, amending the payment provisions of the policies. The essential purport of this amendment with respect to Josephine and Richard was to change their estates from legal remainders in fee to beneficial or equitable remainders for life. It provided for the income to be paid at a stipulated rate to Ruth Potter for life and thereafter to Josephine and Richard for life (with power to encroach upon the principal to the extent of $15,000 each), and for final distribution after their deaths to the children of Josephine and Richard, or, if none, to collateral beneficiaries. At the time this agreement was made neither Connecticut Mutual nor Josephine and Richard knew of the inconsistency between it and the will of Charles Potter.

Ruth Potter died in 1941 without having modified or terminated the agreement with Connecticut Mutual, which thereupon executed a declaration of trust certifying that it held the proceeds of the policies upon terms identical with those provided by the 1938 amendment. It is stipulated that at various times during 1942, 1943 and 1944 Josephine and Richard, through their counsel at the time, demanded that the face amount of the policies be paid over to them, but Connecticut Mutual declined to do so "without a judgment of court." Thereafter Josephine and Richard contented themselves with accepting the income payments made to them by Connecticut Mutual and took no action until 1958, when they brought this suit against Connecticut Mutual and the ultimate remaindermen in fee as designated in the 1938 agreement and subsequent declaration of trust.

■ The appeal here is from a dismissal of the complaint by a summary judgment resting on limitations, in that the cause of action accrued no later than 1941, upon the death of Ruth Potter. The applicable period is 5 years, KRS 413.120(5) and (6), extensible to a possible maximum of 10 years under KRS 413.120(12) and KRS 413.130 (3) in the event of fraud (including, of course, constructive fraud) or mistake.

The contention of Josephine and Richard is that their mother, Ruth Potter, was a trustee under the terms of the will of Charles Potter and that her actions in varying or attempting to vary the terms of the trust did not repudiate it, but merely extended it by a variation that was voidable; hence until they elected to avoid it the original trust "subsisted," or continued to stand, and the statute of limitations was tolled by KRS 413.340, which reads as follows:

> "The provisions of this chapter shall not apply to a continuing and subsisting trust, nor to an action by a vendee of real property in possession to obtain a conveyance."

Subject to the power of appointing to herself such portion of the corpus as she deemed necessary for her comfort, Ruth Potter held the estate of Charles Potter as life tenant with remainder in fee to Josephine and Richard. Though she may not have been a "trustee" in the strict sense of trusts, nevertheless her relation to Josephine and Richard was fiduciary in character, Wheeler v. Kazee, Ky.1952, 253 S.W. 2d 378, and since under our view of the case it becomes immaterial whether she was a trustee or purely a life tenant we shall accept the proposition, but without deciding, that she was trustee under the will of Charles Potter.

■ Insofar as it applies to trusts, KRS 413.340 has little if any significance. It says and means merely that limitations will not run until there is a cause of action. A "subsisting trust" against which limitations do not run is neither more nor less than a trust

in which the trustee is acting within his powers and the cestui que trust has no cause of action against him. See Bogert, Trusts and Trustees (2d ed.), § 951. "The trusts intended to be embraced by the statute, and to be excepted out of the limitation, are those of an exclusively equitable character, where the trustee has a right to hold the estate, and the *cestui que trust* has no right to sue for it. Where, however, the latter has a right of action, and forbears to exercise it, the letter of our statute, as well as the policy of our law, gives the opposing party the right to rely upon the lapse of time." Robinson's Committee v. Elam's Ex'x, 1890, 90 Ky. 300, 14 S.W. 84. Since KRS 413.120 defines the period of limitation by reference to the accrual of the cause of action, KRS 413.340 merely gilds the lily.

"If the period ends during which the trust was by its terms to continue, and there is no conduct on the part of the remaindermen which amounts to a consent that the trustee hold for them under a new trust, or as bailee, or in some other representative capacity, the possession of the old trustee automatically becomes adverse to that of those persons who are entitled to possession at the end of the trust, and the Statute of Limitations regarding an action to recover real or personal property begins to run." Bogert, Trusts and Trustees (2d ed.), § 951, p. 475.

■ If a trustee continues to act after the trust ends, but makes no claim of right either in himself or for the benefit of someone other than the party entitled to immediate possession, and the entitled party makes no demand or effort to enforce his possessory right, there may be some basis—perhaps if only in the mutual consent that might reasonably be implied—for the theory of a continuing trust. Even this, however, would have to be called a new trust, because in theory it could arise and exist only through the implied volition or direction of the new owner of the property, and not by act of the creator of the original trust. (Resting upon intent implied in fact, as distinguished from a trust implied in law

regardless of actual intent, this, of course, would not be either a constructive or resulting trust. Cf. Bogert, Trusts and Trustees, § 45, p. 293, § 471, p. 7; 54 Am.Jur. 152, Trusts, § 193.) If the same theory of implied agreement were applied to a case in which the trustee claims to be holding for beneficiaries other than (or in addition to) the parties entitled to immediate and exclusive possession, the logical result would be a new trust impliedly declared by the entitled parties, as owners of the property, under which rights would be vested in new parties. And if this were so, then unless the instrument or arrangement pursuant to which the trustee claimed to be holding included a power of revocation there would be no basis for the further implication of voidability, by which the newly vested rights might be divested at the election of the settlors. So, even if the conduct of Josephine and Richard following the death of Ruth Potter had amounted "to a consent that the trustee hold for them under a new trust" (as suggested in the above stated quotation from Bogert), the theory of voidability ends in a blind alley. Actually, however, their demands on the trustee in 1942, 1943 and 1944 negate the possibility of any *implied consent*, and in the absence of their consent the trustee's possession necessarily was wrongful. Obviously both could not have had the exclusive right of possession at the same time.

In the ultimate sense, any wrongful possession of property under a claim adverse to the owner amounts to voidable title, since possession is the substantial equivalent of ownership as against all but the holder of legal title. Cf. Holmes, The Common Law, pp. 241–246. This voidability, however, is the very thing the statute is designed to limit. Therefore, if the legal titleholder does not by timely action void the claim of a possessor who holds avowedly under color of title incompatible with his own, his right to do so will be extinguished by limitations. Cf. Superior Oil Corp. v. Alcorn, 1931, 242 Ky. 814, 47 S.W.2d 973, 981.

Granted, then, for the sake of argument that the will of Charles Potter created a trust, the trouble with the position of the appellants here is that the trust that was subsisting, and which operated to obstruct their right of immediate possession upon Ruth Potter's death, was not the same trust created by the will. That trust had come to an end with the death of Ruth Potter. All agree that if Mutual had withheld the corpus under a claim of right in itself, the statute would have run. We see no difference in that the claim was made in behalf of beneficiaries whose color of title did not derive from the will. Their claim, asserted by the trustee, was just as inimical to and inconsistent with the fee simple title and immediate possessory rights of Josephine and Richard as a claim by the trustee in its own right would have been.

We hold, therefore, that the cause of action of the remaindermen to recover possession of the estates vested in them by the will of Charles Potter accrued upon the death of Ruth Potter, the life tenant, and is barred by the statute of limitations.

It is suggested that in order for limitations to run it was necessary that the trustee's claim be to the complete exclusion of Josephine and Richard, whereas instead they have enjoyed all the income since 1941. This type of distinction is appropriate only when the question is whether a trustee's actions *during the life of the trust* were sufficiently clear and unequivocal to signify a repudiation of the trust and commence the running of limitations. It is inapplicable here because after the death of Ruth Potter the trust created by the will of Charles Potter no longer existed, and there was nothing to be repudiated except the trustee's duty to effect a final settlement. And in the latter respect there was never any doubt as to the trustee's purpose in paying only the income. Josephine and Richard knew the reason they had been refused the corpus and were receiving the income was that the trustee's claim with respect to the corpus was adverse to and therefore in repudiation of their own.

Much the same reasoning applies to distinguish the cited case of Lewis v. Hershey, 1910, 45 Ind.App. 104, 90 N.E. 332, which involved the question of whether a trustee's actions during the life of the trust were a sufficiently unequivocal repudiation to begin the running of limitations.

Aside from the technicalities, it is argued that the result reached in this case is inequitable and will frustrate the intention of Charles Potter that his children have the full enjoyment of his estate. The fact is that by their equivocation the children have destroyed the plan themselves. Upon the death of Ruth Potter the money was theirs to do with as they wished, including the right either to accept or reject the apocryphal trust into which she had diverted it. The statute of limitations represents a wholesome policy of law against leaving rights and liabilities hanging in mid-air. There is no valid reason why it should not apply in this case.

Judgment affirmed.