NOTT *v.* BENDER.

[No. 30,697. Filed December 8, 1964. Rehearing denied February 10, 1965.]

*Probst & Probst* of Kendallville, for appellant.

*Grimm & Grimm* of Auburn, for appellee.

LANDIS, J.—This is an appeal from an adverse judgment in a paternity proceeding brought under Burns' §3-623 (1946 Repl.), et seq.,[1] and as a result of which appellant, after a jury trial, was adjudged to be the father of a child born to the appellee-petitioner, Eleanor Jean Bender, and was ordered to pay certain prenatal and postnatal expenses of appellee-petitioner and assume the obligations of a father of said child.

This cause comes to us on petition to transfer from the Appellate Court pursuant to Rule 2-23 of this Court, the opinion of the Appellate Court appearing in 194 N. E. 2d 94.

Appellant contends on this appeal that the lower court erred in refusing to grant him a new trial upon the ground of newly discovered evidence, appellant's motion in this respect stating:

> "That this defendant [appellant] has, since the trial of said cause and the verdict was returned, discovered new, competent and material evidence which he could not, with reasonable diligence, have discovered and produced at the trial of this cause and which can now be produced if a new trial of this cause is had, and which is material to the defendant's [appellant's] cause. . . ."

Appellant filed as exhibits with said motion for new trial two affidavits stating in substance that the two affiants had personal relations with appellee during the period when conception could have taken place, and that

---

1. Acts 1941, ch. 112, § 1, p. 301, *et seq.*

said affiants had no knowledge of the trial on February 8, 1961, but only learned thereof since said time. Appellee filed counter-affidavits of herself and her father in opposition to the previous affidavits and denying the facts contained in such previous affidavits.

We are unable to agree with appellant's contention that he has made out a case for the reversal of the judgment of the lower court on the basis of the ■ allegedly newly discovered evidence as that would require us to weigh the facts contained in conflicting affidavits.[2] This case is distinguishable from *Opp* v. *Davis* (1962), 133 Ind. App. 365, 372, 179 N. E. 2d 298, 301, relied upon by appellant, as in that case no counter-affidavits were filed in opposition to the previous affidavits supporting the motion for a new hearing or new trial. In that case the Court stated at p. 374 of 133 Ind. App., and p. 302 of 179 N. E. 2d:

> "In our opinion the *unchallenged and undenied allegations contained in the said affidavit* attached to and made a part of appellant's motion for a new hearing, were sufficient to warrant the court to open the case and hear any additional evidence having a bearing upon whether others than appellant may have had sexual relations with appellee during the period in which conception could have taken place...." (Emphasis ours.)

It should be further pointed out that the supporting affidavits in the Opp case contained allegations as to sexual intercourse with others at the time in ■ question, but the affidavits in the instant case alleged only "personal relations" of others

---

2. The authorities are too numerous to require citation upon the point that a reviewing court on appeal cannot properly weigh conflicting evidence in order to reverse the judgment of the lower court. See: 2 I.L.E., Appeals, § 577, p. 509.

with appellee, whatever that may be.[3] An affidavit alleging newly discovered evidence should set forth specifically the exact testimony or evidence that would be elicited at a new hearing from the witness or witnesses in question, and should not state the same ambiguously or in a manner requiring inferences to be drawn from it to give it probative force. The instant affidavits were in our judgment also insufficient for this reason.

Appellant has further contended that the court erred in overruling his motion to exclude the child from the courtroom at the hearing of said cause.

The statute[4] pertaining to the trial of these proceedings provides:

"The hearing shall be by the court but if either party demands a jury, it shall be by jury. Both the mother and the alleged father shall be competent to testify but the alleged father shall not be compelled to give evidence. *The court shall exclude the general public from the hearing, and admit only those persons directly interested in the case,* including officers of the court." (Emphasis ours.)

It is appellant's argument that the child involved in this case should have been at all times excluded from the courtroom notwithstanding the above statute. We are unable to ignore the plain language of the above statute which, while excluding the general public from these proceedings, specifically provides the court may

3. The ambiguity of the expression "personal relations" used by appellant is evident from Webster's International Dictionary (Third Edition, p. 1916), which defines "relations" as including dealings, affairs, intercourse, or sexual union.

4. Burns' § 3-638 (1946 Repl.), Acts 1941, ch. 112, § 16, p. 301.

admit those persons directly interested[5] in the case. It is difficult to imagine a person more directly interested in the case than the child for whose benefit the action for care, support and maintenance was brought. The fact that this Court has heretofore considered such child in these proceedings to be an interested party is evident from *State ex rel. Taylor* v. *Greene Circuit Court* (1945), 223 Ind. 562, 564, 63 N. E. 2d 287, 288, wherein it is stated:

" . . . The purpose of the action in said court was to secure the relief provided for an unmarried mother, *her illegitimate child, and other interested persons* by ch. 112, Acts 1941, page 301 et seq., approved March 6, 1941, §§3-623 to 3-655, Burns' 1933 (Supp.), inclusive.

. . . . .

" . . . There are 36 sections in the act, covering many matters in which *such a child* or its mother *might be interested,* . . . ." (Emphasis ours.)

The child obviously was an interested person within the statute, and in our judgment the court committed no error in overruling appellant's motion to exclude him from the courtroom. See also: *Brown* v. *State ex rel. Pavey* (1932), 94 Ind. App. 669, 673, 182 N. E. 263, 264; *Price* v. *State ex rel. Gorden*

---

5. The words "person interested" have been held to signify one who has some legal right or who is under some legal liability, that may be enlarged or diminished, by the decree of the court.

See: Ballentine's Law Dictionary (Second Edition), p. 962. Contrary to the dissent, the words "person interested" used in statutes governing these and other proceedings were not intended to be given a *subjective* interpretation so as to exclude the recognition of interest of a person of little or no comprehension or intelligence. Otherwise, minors and persons under disability who are obviously without understanding and whose rights have been protected by the law and the state for centuries (27 Am. Jur., Infants, § 101, p. 822), would be cut off without recourse to our courts.

*et al.* (1918), 67 Ind. App. 1, 6, 118 N. E. 690, 692; *Lewis* v. *Hershey* (1910), 45 Ind. App. 104, 106, 90 N. E. 332, 333.

Appellant has also complained of the giving of the court's instruction no. 8 which in substance told the jury they should not take into consideration the appearance of the countenance of the child nor draw any conclusions therefrom but that the jury should look only to the evidence given at the trial.

Appellant's objection is that this instruction by telling the jury not to take into consideration the appearance of the child or draw any conclusion therefrom, in fact called particular attention to the child.

This instruction correctly states the law as supported by numerous authorities of this jurisdiction (See: *La Matt* v. *The State ex rel. Lucas* (1891), 128 Ind. 123, 27 N. E. 346, and *Reitz* v. *The State, on the Relation of Holden* (1870), 33 Ind. 187), and was obviously intended to prevent appellant being prejudiced in the minds of the jury by the presence of the child in the courtroom. If the jury followed the instruction appellant in our judgment would not be prejudiced.

Judgment affirmed.

Arterburn, C. J., and Achor, JJ., concur.

Jackson, J., concurs in result.

Myers, J., dissents with opinion.

## DISSENTING OPINION

MYERS, J. —In my opinion the Appellate Court correctly decided this case when it reversed the trial court.

*(Nott* v. *Bender* [1963], Ind. App., 194 N. E. 2d 94.) It cites with approval the case of *Opp* v. *Davis* (1962), 133 Ind. App. 365, 374, 179 N. E. 2d 298, 302, 180 N. E. 2d 788, and quotes at length from it concerning the "intimate" nature of paternity cases such as this, and which says in substance that a more liberal approach should be taken by a juvenile court in making extended inquiry as to the truth or falsity of the matter asserted and that "such finding should be predicated upon something more than conjecture, chance, or the mere opinion of the mother that the person charged is the father."

Here, two affidavits were filed after the trial by two men who stated under oath that each had had "personal relations" with the petitioning mother at about the same time she claimed the defendant-appellant had had sexual relations with her. One affiant stated that he had had three "social engagements" with appellee beginning June 3, 1959, when he had "personal relations" with her; that a week later he "again had relations" with her; and in July he again had "personal relations" with her. These affidavits were attached to the motion for new trial, and it was claimed that the appellant had no knowledge of this until after the jury had rendered its verdict. He asked for a new trial on the basis of newly-discovered evidence. A counter-affidavit was filed by the appellee which denied that she had had "personal or sexual relations" with either of the two affiants although she claimed she knew them and had been out with one of them on different occasions.

The majority opinion herein attempts to distinguish the *Opp* case in that there were no counter-affidavits filed therein, and that the affidavits which were filed contained allegations as to "sexual intercourse," while in this case the affidavits alleged only " 'personal re-

lations' of others with appellee, whatever that may be."

We hope we are not devoid of some sophistication in this modern world in which we live. Yet, indeed, it may be considered a pleasure that we do not have to be informed of sexual acts without the use of four-letter words which seem to be the style today in the field of literature and drama. The restrained choice of words used by affiants in these affidavits should not be misinterpreted by the sophisticate. Even the dictionary says that the word "relations" (used as a noun) means: "sexual union (charged with having—with a woman not his wife)." Webster's Third New International Dictionary, Unabridged, page 1916. In view of the circumstances of this case, I feel certain my fellow Judges were not entirely ignorant of the meaning of the phraseology set forth in these affidavits. Thus, I am in full accord with the Appellate Court opinion that the affidavits put the trial court on notice that there was other evidence to be considered, and it was an abuse of discretion to have overruled the motion for new trial.

Appellant objected to permitting the child of appellee being brought into court. He also objected to Instruction No. 8 which was given by the court and reads as follows:

## "INSTRUCTION NO. 8

"In passing upon the question as to whether or not the defendant, Thomas W. Nott, is the father of the child born to Eleanor Jean Bender on March 9, 1960, you should not take into consideration the appearance of the countenance of the child, nor should you draw any conclusion whatsoever from the appearance of the child. In considering and determining this case you should look only to and consider the oral testimony given in this trial."

These objections were overruled. The baby was born March 9, 1960. The trial was held February 7 and 8, 1961. Thus, the child was about eleven months' old at time of trial. The majority opinion quotes the statute which says that in paternity hearings, the court shall exclude the general public and admit only those persons "directly interested" in the case, including officers of the court. Burns' Ind. Stat., §3-638, 1946 Replacement. It then states that:

> "It is difficult to imagine a person more directly interested in the case than the child for whose benefit the action for care, support and maintenance was brought."

First of all, I think it highly speculative that an eleven-months' old baby could be "interested" in this trial, or any other trial, for that matter. Comprehension of such infants is usually extremely limited. At that age, I think, babies are interested mostly in nutrition, bodily functions, comfort and love from their mothers and fathers. Thus, this infant could not fall within the statute. Citing once again Webster's Third New International Dictionary, Unabridged, at page 1178, we find the word "interested" is said to mean: "having curiosity or sympathy aroused"; "having a share or concern in some affair or project"; "liable to be affected or prejudiced"; Concerned, Involved." These are terms which can only be used in the subjective sense, and they could not apply to an eleven-months' old baby.

The majority opinion cites authority for its premise that since a child is an interested party within the statute, there was no error committed in overruling appellant's motion to exclude him from the court room. I cannot find that the cases cited are in point. None of them have anything to say about permitting the child to be present in the court room. They merely rephrase the

general rule that the mother and child are interested in support and maintenance provisions of statutes pertaining to illegitimate children.

The case of *State ex rel. Taylor* v. *Green Circuit Court* (1945), 223 Ind. 562, 63 N. E. 2d 287, was an original action attacking the 1941 Act entitled: "An act concerning children born out of wedlock." It was held that the Act was not unconstitutional because, as alleged, the title of the Act was not broad enough to cover the subject of the Act.

*Brown* v. *State ex rel. Pavey* (1932), 94 Ind. App. 669, 182 N. E. 263, concerned a child that was stillborn. *Price* v. *State ex rel.* (1918), 67 Ind. App. 1, 118 N. E. 690, involved a void judgment. *Lewis* v. *Hershey* (1910), 45 Ind. App. 104, 90 N. E. 332, concerned a claim against an estate by an illegitimate child for money that should have been used for her support and maintenance.

In the second place, the majority opinion upholds the court's Instruction No. 8 and says that it was "obviously intended to prevent appellant being prejudiced in the minds of the jury by the presence of the child in the court room." The evidence reveals that the infant was brought into the court room for the *voir dire* on February 7, 1961, and again for five minutes on February 8, 1961, when he became "fussy" and was taken out by appellee.

It seems absolutely unrealistic to one that a trial court can ask a jury to wipe out from their minds a comparison with features or countenance between an infant and the alleged father thereof after permitting the infant to be brought into the court room and placed directly in front of them. The very nature of the instruction would alert any jury to have some kind of mental reaction as to such comparison and thus create prejudice. I find myself in accord with Judge Carson's opinion for the Appellate Court wherein he says as

follows at pages 95 and 96 of 194 N. E. 2d):

> "We feel also obligated to comment upon the presence of the child in the courtroom during the trial. While it has been previously held that the presence of the child does not constitute reversible error so long as the trial judge exercises the safeguards outlined by previous decisions of the Supreme Court and Appellate Court of this state, we never the less feel that the ends of justice would be better served if the child were not permitted in the courtroom at any time during the proceedings."

I would reverse and grant a new trial.

## ON PETITION FOR REHEARING

LANDIS, J.—On rehearing appellant has again contended the child for whom a paternity action is brought is not an interested person and that the court erred in overruling appellant's motion to exclude said child at all times from the courtroom.

We believe the authorities and discussion in our earlier opinion require the conclusion that the child was an interested person within the statute and as the statute provides the court may admit interested persons the court committed no error in admitting the child in this case. The record here discloses the child was absent from the hearing during much of the proceedings and no attempt has here been made by appellant to show an abuse of discretion on the part of the trial court with reference to the presence of the child at a specified distance from the jury so as to have prejudiced appellant in light of previous decisions of this State.[1] Furthermore, as stated in the previous opinion, the jury were instructed not to take into consid-

---

1. *Adams* v. *State, ex rel.* (1925, 197 Ind. 80, 149 N. E. 886; *LaMatt* v. *The State, ex rel. Lucas* (1891), 128 Ind. 123, 27 N. E. 346.

eration the appearance of the child or draw inferences therefrom.

No contention has been made that the court erred in failing to maintain proper order and decorum in the courtroom.

We must conclude no error on the part of the trial court has been demonstrated.

Petition for rehearing denied.

Arterburn, C. J., and Achor, J., concur.

Jackson, J., concurs in result.

Myers, J., dissents.

NOTE.—Reported in 202 N. E. 2d 745. Rehearing denied in 204 N. E. 2d 219.