**In the Matter of the Paternity of M. D. H., R. L. W., and C. D. M., Appellants.**

No. 1–981A285.

Court of Appeals of Indiana, First District.

June 30, 1982.
Rehearing Denied Aug. 18, 1982.

Philip H. Hayes, Hayes & Young, Evansville, for appellant Wayne Wells.

John Wissner, Scales, Wissner & Krantz, Boonville, for appellants Richard Johnson and Sid Mayo.

E. Nelson Chipman, Jr., Chipman, Humphrey & Chipman, Plymouth, for amicus curiae applicant Gary Nitcher.

Linley E. Pearson, Atty. Gen., Margarett Knight, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

In this consolidated interlocutory appeal three putative fathers object to denials of their individual motions to dismiss petitions to establish paternity in support proceedings. We affirm in each case.

## FACTS

On October 20, 1980, the Warrick County Department of Public Welfare filed a petition, "In the Matter of the Paternity of C. D. M.," in the Warrick Superior Court, Juvenile Division, seeking to establish the paternity of C. D. M. born January 4, 1977. On November 24, 1980, a default judgment was entered against the alleged father. Upon defendant's request the default judgment was set aside on March 6, 1981. Blood tests were ordered and a Motion for Summary Judgment filed. On May 6, 1981, the alleged father filed a Motion to Dismiss based upon a statute of limitations defense.

R. L. W., born November 9, 1975, was the subject of a paternity action brought in the Warrick Circuit Court, Juvenile Division, on January 29, 1981. The complaint for support brought in R. L. W.'s name was upon affidavit of his mother as next friend represented by the prosecuting attorney. A previous action to establish the paternity of R. L. W. had been filed in the Warrick Circuit Court by the Warrick County Department of Public Welfare on November 10, 1980, but had been dismissed upon a statute of limitations defense on January 21, 1981. A motion for summary judgment was filed by the prosecutor's office on April 6, 1981, and the alleged father filed a motion to dismiss on May 6, 1981, on the grounds of res judicata and the statute of limitations.

On March 2, 1981, a "Petition to Establish Paternity of Child" was filed in Warrick Circuit Court, Juvenile Division, by the prosecuting attorney and mother as next friend of M. D. H., born June 9, 1975. A previous paternity action filed May 18, 1976, had been dismissed with prejudice on August 11, 1976, when the mother for the second time had failed to appear for a hearing on her complaint. The alleged father moved to dismiss on the grounds that the same claim had been dismissed with prejudice and that the statute of limitations had run.

On September 9, 1981, Motions to Dismiss were denied in the R. L. W. and C. D. M. cases and on September 21, 1981, in the M. D. H. case. Petitions for Certification for Interlocutory Appeal were filed and all three cases were properly certified by the trial court for interlocutory appeal. For purposes of this appeal all parties stipulated to the following facts:

1. All three children were conceived and born out of wedlock;

2. The natural mothers and putative fathers were continuous residents of the state of Indiana and that their whereabouts were readily ascertainable at all times;

3. No incapacity prevented the commencement of an action to establish paternity in any case from the date of birth of any of the children involved;

4. Paternity has not been established in any of the cases by any court, by any oral or written acknowledgement thereof by any of the putative fathers, or by any payment of child support by or on behalf of the putative fathers to the children or mothers;

5. The putative fathers have in no way waived the statute of limitations applicable to proceedings to enforce the obligation of a father for support or for fulfilling any parental obligation from the date of any child's birth.

The Act Concerning Children Born Out of Wedlock, enacted in 1941 and repealed October 1, 1979, was in effect at the birth of each child for whose benefit the actions at bar were brought. Codified at Ind.Code § 31-4-1-26, 1941 Ind.Acts, ch. 112, § 25, provided the following:

"Proceedings to enforce the obligation of the father shall not be brought after the lapse of more than two years from the birth of the child, unless paternity has been established by a judgment of a court of competent jurisdiction, or has been acknowledged by the father in writing or unless support has been furnished by the alleged father, or by some person on his behalf, either voluntarily or pursuant to an agreement with the mother or some person on her behalf or on behalf of the child. If the paternity has been so established, or if support has been so furnished, the action may be brought at any time within two years after the acknowledgment or the last furnishing of support to the child. Not more than two years' accrued support furnished prior to the bringing of the action may be recovered from the father or his representatives. If the mother was under legal disability when the cause of action arose or the father was a nonresident or subsequently became a nonresident before the lapse of said period, or the whereabouts of the father is unknown and cannot be ascertained by diligent search and inquiry, then the period of such disability, nonresidence, or lack of knowledge of the whereabouts of the father shall not be counted in such period of limitation."

Effective March 8, 1978, Ind.Code § 12–1–6.1 concerning child support was amended with the addition of the following Section 15.5:

"*Notwithstanding IC 31–4–1*, if the child has received public assistance or is currently receiving public assistance, an action to compel support may be brought by the state department of public welfare or a county department of public welfare. If:

(1) the mother

(2) the person with whom the child resides; or

(3) the director of the county department of public welfare;

has executed an assignment of support rights under Title IV D of the Federal Social Security Act (42 U.S.C. 651 *et seq.*), the action shall be brought in accordance with the terms of the cooperative agreement entered into between the state department of public welfare and the prosecuting attorney. *Any action brought under this section may only be brought before the child's fifth (5th) birthday.* The father shall not be held liable for support payments that accrued more than two (2) years before the action is commenced." (Emphasis added.)

1978 Ind.Acts, Pub.L. 69, § 2. Meanwhile, in 1978 the legislature enacted a new chapter on paternity into the juvenile code, Ind. Code § 31–6–6–1 to 22, 1978 Ind.Acts, Pub.L. 136, §§ 1–22, to become effective October 1, 1979. However, before the chapter, and specifically § 17, went into effect the legislature replaced it with Ind.Code 31–6–6.1–1 to 19, 1979 Ind.Acts, Pub.L. 277, to become effective October 1, 1979. These Acts appear to combine provisions taken from both the Uniform Parentage and Paternity Acts. *See* 9A U.L.A. Uniform Parentage Act and Uniform Act on Paternity (1979). In contrast to Ind.Code § 31–4–1–9, which was repealed effective October 1, 1979, and which provided that only the mother, or a party in her stead, might bring an action to compel paternal support for the illegitimate child, Ind.Code § 31–6–6.1–2 states:

"(a) A paternity action may be filed by the following persons:

(1) the mother, or expectant mother;

(2) a man alleging that he is the child's biological father, or that he is the expectant father of an unborn child;

(3) the mother and a man alleging that he is her child's biological father, or by the expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly; or

(4) a child.

A person under the age of eighteen (18) may file a petition if he is competent except for his age. A person who is otherwise incompetent may file a petition through his guardian, guardian ad litem, or next friend.

(b) In every case, the child, the child's mother, the child's presumed father and any person alleged to be the father are necessary parties to the action."

1979 Ind.Acts, Pub.L. 277, § 2. Section 6 of this same statute sets out the applicable time periods in which the parties must bring their actions:

"(a) The mother or a man alleging to be the child's father must file an action within two (2) years after the child is born, unless:

(1) both the mother and the alleged father waive the limitation on actions and file jointly;

(2) the alleged father has substantially fulfilled his obligation as a parent during the period between the child's conception and the date of filing;

(3) the mother files a petition after the alleged father has acknowledged in writing that he is the child's biological father;

(4) the alleged father files a petition after the mother has acknowledged in writing that he is the child's biological father;

(5) the petitioner was incompetent for a reason other than age at the time the child was born; or

(6) a responding party cannot be served with summons during the two (2) year period.

A person other than the child must file a petition within two (2) years after any of the above conditions ceases to exist, except that he may not file a petition after the child reaches eighteen (18) years of age.

(b) The child may file a petition at any time before he reaches twenty (20) years of age. If the child is incompetent on his eighteenth birthday, he may file a petition within two (2) years after he becomes competent.

(c) Notwithstanding any other provision of this section, an action must be filed during the lifetime of the alleged father, or within five (5) months after his death.

(d) An action not otherwise barred is not barred by the death or stillbirth of the child or by the death of the mother."

1979 Ind.Acts, Pub.L. 277, § 6. These sections were amended effective February 27, 1980, to read as follows:

"SECTION 2. IC 31–6–6.1–2, as added by Acts 1979, P.L. 277, SECTION 1, is amended to read as follows: Sec. 2. (a) A paternity action may be filed by the following persons:

(1) the mother, or expectant mother;

(2) a man alleging that he is the child's biological father, or that he is the expectant father of an unborn child;

(3) the mother and a man alleging that he is her child's biological father, or by the expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly; or

(4) a child.

A person under the age of eighteen (18) must file a petition if he is competent except for his age. A person who is otherwise incompetent may file a petition through his guardian, guardian ad litem, or next friend.

(b) The state department of public welfare or a county department of public welfare may file a paternity action if:

(1) the mother;

(2) the person with whom the child resides; or

(3) the director of the county department of public welfare;

has executed an assignment of support rights under Title IV–D of the federal Social Security Act (42 U.S.C. 651 et seq.). The action by the state or county department of public welfare must be brought in accordance with the terms of the cooperative agreement entered into between the state department of public welfare and the prosecuting attorney.

(b)(c) In every case, the child, the child's mother, the child's presumed father and any person alleged to be the father are necessary parties to the action.

. . . .

SECTION 4. IC 31–6–6.1–6, as added by Acts 1979, P.L. 277, SECTION 1, is

amended to read as follows: Sec. 6. (a) Except for an action filed by the state department of public welfare or the county department of public welfare under subsection (c), the mother o̶r̶, a man alleging to be the child's father, the state department of public welfare, or the county department of public welfare must file an action within two (2) years after the child is born, unless:

(1) both the mother and the alleged father waive the limitation on actions and file jointly;

(2) t̶h̶e̶ ̶a̶l̶l̶e̶g̶e̶d̶ ̶f̶a̶t̶h̶e̶r̶ ̶h̶a̶s̶ ̶s̶u̶b̶s̶t̶a̶n̶t̶i̶a̶l̶l̶y̶ f̶u̶l̶f̶i̶l̶l̶e̶d̶ ̶h̶i̶s̶ ̶o̶b̶l̶i̶g̶a̶t̶i̶o̶n̶ ̶a̶s̶ ̶a̶ ̶p̶a̶r̶e̶n̶t̶ ̶d̶u̶r̶-̶ i̶n̶g̶ ̶t̶h̶e̶ ̶p̶e̶r̶i̶o̶d̶ ̶b̶e̶t̶w̶e̶e̶n̶ ̶t̶h̶e̶ ̶c̶h̶i̶l̶d̶'̶s̶ ̶c̶o̶n̶-̶ c̶e̶p̶t̶i̶o̶n̶ ̶a̶n̶d̶ ̶t̶h̶e̶ ̶d̶a̶t̶e̶ ̶o̶f̶ ̶f̶i̶l̶i̶n̶g̶;̶ support has been furnished by the alleged father or by a person acting on his behalf, either voluntarily, or under an agreement with:

(A) the mother;

(B) a person acting on the mother's behalf; or

(C) a person acting on the child's behalf;

(3) the mother, the state department of public welfare, or the county department of public welfare files a petition after the alleged father has acknowledged in writing that he is the child's biological father;

(4) the alleged father files a petition after the mother has acknowledged in writing that he is the child's biological father;

(5) the petitioner was incompetent f̶o̶r̶ a̶ ̶r̶e̶a̶s̶o̶n̶ ̶o̶t̶h̶e̶r̶ ̶t̶h̶a̶n̶ ̶a̶g̶e̶ at the time the child was born; or

(6) a responding party cannot be served with summons during the two (2) year period.

A p̶e̶r̶s̶o̶n̶ ̶o̶t̶h̶e̶r̶ ̶t̶h̶a̶n̶ ̶t̶h̶e̶ ̶c̶h̶i̶l̶d̶ ̶m̶u̶s̶t̶ ̶f̶i̶l̶e̶ ̶a̶ petition must be filed within two (2) years after any of the above conditions ceases to exist,̶ ̶e̶x̶c̶e̶p̶t̶ ̶t̶h̶a̶t̶ ̶h̶e̶ ̶m̶a̶y̶ ̶n̶o̶t̶ f̶i̶l̶e̶ ̶a̶ ̶p̶e̶t̶i̶t̶i̶o̶n̶ ̶a̶f̶t̶e̶r̶ ̶t̶h̶e̶ ̶c̶h̶i̶l̶d̶ ̶r̶e̶a̶c̶h̶e̶s̶ e̶i̶g̶h̶t̶e̶e̶n̶ ̶(̶1̶8̶)̶ ̶y̶e̶a̶r̶s̶ ̶o̶f̶ ̶a̶g̶e̶.

(b) The child may file a petition at any time before he reaches twenty (20) years of age. If the child is incompetent on his eighteenth birthday, he may file a petition within two (2) years after he becomes competent.

(c) If public assistance has been furnished for the child by the state department of public welfare and an assignment of support rights under Title IV–D of the federal Social Security Act (42 U.S.C. 651 et seq.) has been executed on behalf of the child, an action may be filed by the state department of public welfare or the county department of public welfare before the child's fifth birthday.

(̶c̶)̶(d) Notwithstanding any other provision of this section, an action must be filed during the lifetime of the alleged father, or within five (5) months after his death.

(̶d̶)̶(e) An action not otherwise barred is not barred by the death or stillbirth of the child or by the death of the mother."

1980 Ind.Acts, Pub.L. 183, §§ 2, 4.

## ISSUE

The sole issue in each of these three cases is whether or not the trial court erred in failing to grant a motion to dismiss based upon the statute of limitations defense of Ind.Code § 31–4–1–26.

## DISCUSSION AND DECISION

The putative fathers collectively argue that the trial courts erred in refusing to grant their motions to dismiss because more than two years had passed since the birth of each child and any right which the child might have had to prove paternity in a support action had been extinguished by the limitation period of Ind.Code § 31–4–1–26. The state contends that the courts correctly denied the motions to dismiss because the two-year statute of limitations in effect at the time each of the children was born is an unconstitutional denial of those illegitimate children's rights to equal protection under the law. Unfortunately, neither the appellants nor the amicus curiae adequately addresses the issue of constitutionality intrinsic to these actions. However, in light of the recent Supreme Court opinion in *Mills v. Habluetzel*, (1982) —— U.S. ——,

102 S.Ct. 1549, 71 L.Ed.2d 770, we are constrained to agree with the state.

In *Gomez v. Perez*, (1973) 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56, the Supreme Court faced the question of "whether the laws of Texas may constitutionally grant legitimate children a judicially enforceable right to support from their natural fathers and at the same time deny that right to illegitimate children." 409 U.S. at 535, 93 S.Ct. at 873. The Court held

"that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is 'illogical and unjust.' [*Weber v. Aetna Casualty & Surety Co.*, (1972) 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768.] We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination. *Stanley v. Illinois*, 405 U.S. 645, 656–657, 92 S.Ct. 1208, 1215–1216, 31 L.Ed.2d 551 (1972); *Carrington v. Rash*, 380 U.S. 89 [85 S.Ct. 775, 13 L.Ed.2d 675], (1965)."

409 U.S. at 538, 93 S.Ct. at 875.

In *Mills*, decided April 5, 1982, Justice Rehnquist, who prepared the Court's opinion, stated that Texas's one-year statute of limitation in paternity actions granted the illegitimate child only an illusory opportunity to obtain parental support and thus found the statute to be an unconstitutional denial of equal protection to illegitimate children since legitimate children in Texas had the opportunity to obtain parental support throughout their minority. Justice Rehnquist pointed out that statutes of limitation in paternity cases grounded in a support action "will survive equal protection scrutiny to the extent they are substantially related to a legitimate state interest," 102 S.Ct. at 1554, and focused his analysis of the legitimacy of such restrictions on two

points, (1) the unique proof-of-paternity element in suits brought by illegitimate children which suits by legitimate children do not require and (2) the legitimate state interest undergirding statutes of limitation generally to avoid stale or fraudulent claims. He concluded that because of these two distinguishing factors, "[t]he fact that Texas must provide illegitimate children with a bona fide opportunity to obtain paternal support does not mean, however, that it must adopt procedures for illegitimate children that are coterminous with those accorded legitimate children." 102 S.Ct. at 1553.

Justice O'Connor, joined by Chief Justice Burger and Justices Brennan and Blackmun, concurred in the Court's opinion because it did not prejudge the constitutionality of longer periods of limitation. However, in her separate concurring opinion Justice O'Connor reviewed the two prongs of Justice Rehnquist's equal protection analysis and concluded that "[a] review of the factors used in deciding that the one-year statute of limitation cannot withstand an equal protection challenge indicates that longer periods of limitation for paternity suits also may be unconstitutional." 102 S.Ct. at 1558. In addition, Justice O'Connor pointed to a third factor which Justice Rehnquist had not considered:

"It is also significant to the result today that a paternity suit is one of the few Texas causes of action not tolled during the minority of the plaintiff. Of all the difficult proof problems that may arise in civil actions generally, paternity, an issue unique to illegitimate children, is singled out for special treatment. When this observation is coupled with the Texas legislature's efforts to deny illegitimate children any significant opportunity to prove paternity and thus obtain child support, it is fair to question whether the burden placed on illegitimates is designed to advance permissible state interests." (Footnote omitted.)

102 S.Ct. at 1557. Justice Powell emphasized particularly this last point of Justice O'Connor's opinion, and while concurring in

the judgment and in Part I of Justice O'Connor's opinion, he explicitly refused to join "the Court's opinion." 102 S.Ct. at 1558. Thus all of the Justices agree that a one-year statute of limitations in paternity cases associated with a child's action for support is a violation of that illegitimate child's constitutional right to equal protection under the law because the statute confers at best only an illusory right. At least five of the Justices intimate that any period of limitation shorter than the age of majority, where the state provides such a right to the legitimate child and where infancy tolls the statutes of limitation in other causes of action, might also be found to be unconstitutional. That such limitations will in fact be found unconstitutional is the emerging majority rule. *See, e.g., State ex rel. S. M. B. v. D. A. P.*, (1981) W.Va., 284 S.E.2d 912 (Three-year statute of limitation held unconstitutional; summons served when child slightly more than three years old.); *County of Lenoir ex rel. Cogdell v. Johnson*, (1980) 46 N.C.App. 182, 264 S.E.2d 816 (Three-year statute of limitation; action by child almost ten years old.); *Florida Dept. of Health & Rehabilitative Services ex rel. Lucinda Gillespie v. West*, (1979) Fla., 378 So.2d 1220 (Four-year statute of limitation; child four years old.); *Stringer v. Dudoich*, (1978) 92 N.M. 98, 583 P.2d 462 (Two-year statute of limitation; child five years old.)

■ Jurisdictions which uphold the constitutionality of short statutes of limitation in such cases generally do so on the theory that the statutes do not cut off the child's fundamental right to support, which can be obtained from the mother and/or the state, but merely his right to establish paternity.

*See, e.g., State ex rel. Krupke v. Witkowski*, (1977) Iowa, 256 N.W.2d 216; *Cessna v. Montgomery*, (1976) 63 Ill.2d 71, 344 N.E.2d 447; *Texas Dept. of Human Resources v. Chapman*, (1978) Tex.Civ.App., 570 S.W.2d 46. Although the Supreme Court did not explicitly address this argument in *Mills*, the Court implicitly rejected it by focusing its attention on the fact that it is the state's provision for a legally enforceable opportunity to obtain *parental* support for one class of children over another that gives rise to the equal protection question.[1] As aptly stated by the North Carolina Court of Appeals in *County of Lenoir*,

> "While we make no finding as to whether a child enjoys a constitutional right to seek support from its parents throughout its minority, there can be no question that the Equal Protection Clause will not permit a State to grant such a right to legitimate children and deny it to illegitimate children."

264 S.E.2d at 820. Thus, the minority position misplaces the focus of the equal protection issue: it is not the right to support during minority which is constitutionally guaranteed to the illegitimate child, but rather the right to equal treatment under the law.

Since at least 1941 Indiana by statute has imposed on parents the obligation to support their children born out of wedlock. *See* 1941 Ind.Acts, ch. 112, § 2 (repealed effective October 1, 1979).[2] Current statutory provisions relating to support orders for legitimate and illegitimate children are virtually identical. *Compare* Ind.Code § 31–1–11.5–12 *with* Ind.Code § 31–6–6.1–13.[3] *See also Goins v. Lott*, 435 N.E.2d 1002

1. The opinion of the Texas court was not reported, but Justice O'Connor noted that "[t]he appellee has set forth a number of 'state interests' to justify the one-year statute of limitation, but the Court accepts only one of these as permissible—the interest in preventing the prosecution of stale or fraudulent claims." 102 S.Ct. at 1556.

2. "Sec. 2. Obligations of Parents. The parents of a child born out of wedlock and not legitimated, hereinafter referred to in this act as the 'child,' owe the child necessary maintenance, medical care, education, and support, and are

liable for the child's funeral expenses. The obligations imposed upon parents to support their legitimate children are hereby imposed upon the parents of children born out of wedlock."

3. "IC 31–1–11.5–12 Child support

Sec. 12. Child Support. (a) In an action pursuant to section 3(a), (b), or (c), the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:

(Ind.App.1982). Indiana also makes it a criminal offense for a person knowingly or intentionally to fail to provide support to his dependent child, without distinction as to whether that child is legitimate or illegitimate. See Ind.Code § 35–46–1–5(a).[4] Because a parent's obligation to support his minor child, legitimate or illegitimate, is a basic tenet recognized in this state by statutes that provide civil and criminal sanctions against parents who neglect such duty, the question before us becomes whether the two-year limitation period, which would effectively cut off the illegitimate child's opportunity to obtain paternal support after that point, is substantially related to a legitimate state interest.

■ It has been said that

"[s]tatutes of limitations always have vexed the philosophical mind for it is difficult to fit them into a completely logical and symmetrical system of law.... [They] find their justification in necessity and convenience rather than in logic. They represent expedients,

---

(1) the financial resources of the custodial parent;
(2) standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;
(3) physical or mental condition of the child and his educational needs; and
(4) financial resources and needs of the noncustodial parent.
(b) Such child support order may also include, where appropriate:
(1) sums for the child's education in schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses; and
(2) special medical, hospital or dental expenses necessary to serve the best interests of the child.
(c) As part of such child support order the court may set apart such portion of the property of either parent or both parents, as may seem necessary and proper for the support of the child.
(d) The duty to support a child under this chapter ceases when the child reaches his twenty-first (21st) birthday unless:
(1) the child is emancipated prior to his twenty-first (21st) birthday in which case the child support, except for educational needs, terminates at the time of emancipation; however, an order for educational needs may continue in effect until further order of the court; or
(2) the child is incapacited in which case the child support continues during the incapacity or until further order of the court.
(Formerly: Acts 1973, P.L. 297, SEC. 1; Acts 1974, P.L. 132, SEC. 8). As amended by Acts 1979, P.L. 274, SEC. 2; Acts 1981, P.L. 264, SEC. 9."
"IC 31–6–6.1–13 Support order; consideration; contents; funeral expenses; setting aside parent's property; termination of order; change in circumstances
Sec. 13. (a) The court may order either or both parents to pay any reasonable amount for child support after considering all relevant factors, including the following:

(1) the financial resources of the custodial parent;
(2) the standard of living the child would have enjoyed had the parents been married and remained married to each other;
(3) the physical and mental condition of the child and his educational needs; and
(4) the financial resources and needs of the noncustodial parent.
(b) Where appropriate, the support order may include:
(1) funds for the child's education beyond the twelfth grade, after the court has considered the child's aptitude and ability and the ability of the parents to meet these expenses; and
(2) special medical, hospital, or dental expenses necessary to serve the best interests of the child.
(c) If the child dies while a support order is in effect, the court may order either or both parents to pay reasonable funeral expenses.
(d) The court may set aside any portion of either parent's property that may be necessary and proper for the support of the child.
(e) The duty to support a child under this chapter ceases when the child reaches his twenty-first birthday unless:
(1) the child is emancipated before his twenty-first birthday in which case the child support, except for educational needs, terminates at the time of emancipation; however, an order for educational needs may continue in effect until further order of the court; or
(2) the child is incapacitated in which case the child support continues during the incapacity or until further order of the court.
(f) A support order may be modified or revoked upon a showing of a substantial change in circumstances. As added by Acts 1979, P.L. 277, SEC. 1."

4. "IC 35–46–1–5 Nonsupport of a dependent child
Sec. 5. (a) A person who knowingly or intentionally fails to provide support to his dependent child commits nonsupport of a child, a Class D felony."

rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost."

*Chase Securities Corp. v. Donaldson*, (1945) 325 U.S. 304, 313–14, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628. There can be no question but that the state has a legitimate interest in preventing stale or fraudulent claims and that such legitimate interest is the fundamental rationale of statutes of limitation. *See Mills*; 19 I.L.E. *Limitation of Actions* § 1 (1959). However, because a child is entitled to support throughout his minority, a child's claim for support brought at any time during that period can hardly be said to be stale. *County of Lenoir*, 264 S.E.2d at 821; *Florida Dept. of Health & Rehabilitative Services ex rel. Lucinda Gillespie v. West; State v. Cordrey*, (1955) 49 Del. 281, 114 A.2d 805 (nonsupport is a continuing crime). Furthermore, the state's legitimate interest in avoiding stale or possibly speculative claims in such actions pales into insignificance when compared with the more compelling interest of the state in preserving its fiscal integrity. Our courts have recognized that the primary purpose of paternity actions is to secure support and education for illegitimate children. *See Nott v. Bender*, (1964) 246 Ind. 186, 202 N.E.2d 745, *reh. denied* 246 Ind. 186, 204 N.E.2d 219; *State ex rel. Beaven v. Marion Juvenile Court*, (1962) 243 Ind. 209, 184 N.E.2d 20; *D. R. S. v. R. S. H.*, (1980) Ind.App., 412 N.E.2d 1257. A legitimate subsidiary goal of this same action, however, is "to protect the public interest by preventing the illegitimate child from becoming a ward of the state. *J. E. G. v. C. J. E.*, (1977) 172 Ind. App. 515, 360 N.E.2d 1030. *See generally* 10 Am.Jur.2d *Bastards* § 75 (1963)." *D. R. S. v. R. S. H.*, 412 N.E.2d at 1261. Where the mother as custodial parent is unable to support the child and the father does not support it either because his identity has not been established or he has not been located, society, of course, bears the burden of support. We share the concern of the West Virginia Supreme Court that the contemporary disdain for traditional family patterns and life styles has resulted in a severe strain on the limited resources of established social institutions:

"In this regard we would note that the incidence of illegitimacy rises in this country every year; furthermore, a few women, perhaps following the example of T. S. Garp's mother, J. Irving, *The World According to Garp* (1978) deliberately choose to have children out of wedlock because they consciously decide that they want a child but not a husband. *See, e.g.*, Rivlin, 'Choosing to Have a Baby on Your Own,' *Ms*, April 1979, p. 68. While we hardly find this either an intelligent or an appropriate approach to the sound upbringing of children, nonetheless, we must recognize the existence of new patterns of life. [Footnotes omitted.] The difficulty, of course, with eccentric lifestyles is that when they fail to yield the results which were intended the ultimate burden of compensating for individuals' lack of foresight ultimately falls upon the inadequate resources of the West Virginia Department of Welfare."

*State ex rel. S. M. B. v. D. A. P.*, (1981) W.Va., 284 S.E.2d 912, 915–16. In light of the public policy considerations reflected by the West Virginia Court and by legislative attempts to deal with the problem both on national, 42 U.S.C. § 651 (1974), and on local, Ind.Code § 31–2–1–1 to –39, levels, we can do no better than to echo the words of the Washington Supreme Court: "The state has a compelling interest in assuming that the primary obligation for support of illegitimate children falls on *both* natural parents rather than on the taxpayers of this state." *State v. Wood*, (1977) 89 Wash.2d 97, 569 P.2d 1148, 1151.

Additionally, like Justice O'Connor, we fail to comprehend how traditional problems of proof in paternity cases differ in any significant respect from problems of proof in other civil actions arising during minority or why the problems of proof in cases involving only illegitimate children should be singled out for special treatment.

Indiana apparently imposes no similar period of limitation upon a presumed father from contesting or disproving his paternity of children born in wedlock. *See A. B. v. C. D.*, (1971) 150 Ind.App. 535, 277 N.E.2d 599, *trans. den.* (1972); *R. D. S. v. S. L. S.*, (1980) Ind.App., 402 N.E.2d 30. And minority tolls the statutes of limitation in all other causes of action in Indiana, *see* Ind.Code § 34–1–2–5 & 5.5, except those involving medical malpractice or products liability.[5] In addition, recent scientific advances in blood testing and tissue analysis have simplified considerably the evidentiary problems in paternity cases and are reported by the North Carolina Court of Appeals as being "between 95.4 and 99.4 percent accurate in determining a defendant's lack of paternity." *County of Lenoir*, 264 S.E.2d at 821, *citing* Kateley, Codere, and Maldonado, *Blood Testing in Disputed Parentage: The Current Role of HLA Typing*, 1 Clinical Immunology Newsletter (No. 4, Feb. 1980) and *Joint AMA–ABA Guidelines: Recent Status of Serologic Testing in Problems of Disputed Parentage*, 10 Fam.L.Q. 247 (1976). Furthermore, the Supreme Court has recently bestowed a constitutional blessing upon these tests, both provided for by Ind.Code § 31–6–6.1–8,[6] in *Little v. Streater*, (1981) 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627. There the Court held that, in view of the unique significance of such tests as exculpatory evidence, a Connecticut statute which provided that the costs of blood grouping tests in paternity actions is to be borne by the party requesting them denied an indigent defendant due process of law. Even though in *Mills* Justice Rehnquist stated that "[t]he proper evidentiary weight to be given to these techniques is still a matter of academic dispute," 102 S.Ct. at 1554, n. 4, no one has suggested that either the high degree of reliability or of probative value of these tests is in any way affected by the passage of time. *See* Terasaki, *Resolution by HLA Testing of 1,000 Paternity Cases Not Excluded by ABO Testing*, 16 J.Fam.L. 543 (1978); Jaffee, *Comment on the Judicial Use of HLA Paternity Test Results and Other Statistical Evidence: Response to Terasaki*, 17 J.Fam.L. 457 (1979). It is difficult to argue seriously, therefore, that inherent problems of proof should bar paternity actions after two years when the same, or even more difficult, evidentiary problems do not bar contract or tort actions after a much longer period of time.

■ Because we believe that the state's interest in protecting its fiscal integrity outweighs its countervailing interest in protecting against stale claims and because we find that problems of proof in paternity cases are no greater than, if as great as, problems of proof in other causes of action whose statutes of limitation are tolled by infancy, we hold there is no substantial, or even reasonable, state interest which would justify any longer the invidious barrier erected before the illegitimate child who after two years is precluded from bringing a support action if it depends upon a determination of paternity. Such limitation on an action grounded in the classification of illegitimacy can be characterized only as broadly discriminatory and not carefully attuned to alternative considerations. *See Mathews v. Lucas*, (1976) 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651.

---

5. We note parenthetically that the statute of limitations of the Indiana Medical Malpractice Act, Ind.Code § 16–9.5–3–1, has withstood the test of a constitutional challenge, *see Johnson v. St. Vincent Hospital*, (1980) Ind., 404 N.E.2d 585, but that as yet the statute of limitations in products liability cases, Ind.Code § 34–4–20A–5, has not been subjected to constitutional analysis. In either case, however, these periods of limitation are not significant in the context of our constitutional inquiry because their impact upon the legitimate and the illegitimate child is identical.

6. "IC 31–6–6.1–8 Blood grouping test

Sec. 8. Upon the motion of any party, the court shall order all of the parties to the action to undergo either a blood grouping test or a Human Leukocyte Antigen (HLA) tissue test. The tests shall be performed by a qualified expert approved by the court, and the results of the tests may be received in evidence. *As added by Acts 1979, P.L. 277, SEC. 1. Amended by Acts 1980, P.L. 183, SEC. 5.*"

Based upon our holding today we affirm the trial court's refusal to dismiss the paternity action involving C. D. M. solely because the Warrick County Department of Welfare's action was not brought within two years from the date of C. D. M.'s birth. As noted in the Facts section of this opinion, Ind.Code § 12–1–6.1–15 was enacted effective March 8, 1978, and provided that a county department of public welfare could bring an action to compel support prior to a child's fifth birthday, *notwithstanding Ind. Code § 31–4–1.* Subsequently, Ind.Code 31–6–6.1–2 and 6 were amended effective February 27, 1980, to include similar provisions. A general rule with respect to statutes of limitation is that the period of limitation in effect at the time the suit is brought governs in an action even though it may lengthen or shorten an earlier period of limitation. *Indiana Dept. of State Revenue, Inheritance Tax Division v. Estate of Puett,* 435 N.E.2d 298 (Ind.App.1982); *Dodd v. Kiefer,* (1981) Ind.App., 416 N.E.2d 463; 19 I.L.E. *Limitation of Actions* § 5 (1959). *See also* Annot., 59 A.L.R.3d 685 (1974). However, another general rule with respect to such statutes is that if the plaintiff's suit was barred by the running of a statute of limitations prior to the extension of the limitation period, the subsequent statute cannot revive the defendant's liability. *Indiana Dept. of State Revenue v. Puett; Green v. Karol,* (1976) 168 Ind.App. 467, 344 N.E.2d 106; 10 I.L.E. *Limitation of Actions* § 5 (1959). In this case the original limitation period had not run before the subsequent statute was enacted. C. D. M. was born on January 4, 1977. Ind.Code § 12–1–6.1–15.5 became effective on March 8, 1978, prior to the running of the earlier two-year limitation period and established the welfare department's right until C. D. M.'s fifth birthday to bring an action compelling support. That time period was not altered by Ind.Code § 31–6–6.1–6. The Warrick County Department of Welfare brought the instant action on October 20, 1980, well within its five-year period of limitation, hence in a timely fashion.

We also affirm the trial court's action in the paternity-support petition of R. L. W. and note that res judicata is not applicable here. The earlier action to establish paternity was filed not by or in the name of the child, but solely in the name of the Warrick County Department of Welfare upon an assignment of rights by the child's mother. The child was in no way a party to the action, and the court properly dismissed the action brought in the name and for the benefit of the Warrick County Welfare Department since it was filed later than the child's fifth birthday.

Likewise, we affirm the trial court's action in the paternity-support action for the benefit of M. D. H., the earlier dismissal having been effective only as to any rights the mother may have had in this cause.

All judgments affirmed.

NEAL and ROBERTSON, JJ., concur.