In the Matter of the ESTATE OF Mary Lou WEIDMAN, Deceased.

**Rodney WEIDMAN, Appellant,**

v.

**Pamela Rose Weidman STAHLHUT, Individually and as Executor of the Mary Lou Weidman Estate, Appellee.**

No. 90–322.

Supreme Court of Iowa.

Oct. 16, 1991.

Rehearing Denied Nov. 26, 1991.

---

William H. Engelbrecht and David M. Engelbrecht of Engelbrecht, Ackerman & Hassman, Waverly, for appellee.

SCHULTZ, Justice.

In this appeal, plaintiff Rodney Weidman (Rodney), seeks to contest the will of his mother, Mary Lou Weidman (Mary). The district court dismissed his petition on the basis that plaintiff's will contest action was not filed within the four-month limitation period prescribed by Iowa Code section 633.309 (1985). We affirm.

Mary executed a new will on December 12, 1986. She died later that day. Mary's prior will left her property to plaintiff and

her other child, defendant Pamela Rose Stahlhut (Pamela), in equal shares. However, Mary's new will left her entire estate to Pamela and stated that "I have intentionally made no provision for my son, Rodney...."

The new will was admitted to probate and Pamela was appointed executor of the estate. On December 30, 1986, and January 6, 1987, the standard probate notice was published in a local newspaper in the form required by Iowa Code section 633.-304 (1985).[1]

The estate was permitted to remain open in order to investigate a possible medical malpractice claim. On June 5, 1989, while the estate was still pending, plaintiff filed a will contest action against Pamela individually and as executor of the estate. Plaintiff alleged that decedent was "of unsound mind" and influenced by Pamela when she signed the new will. In addition, plaintiff's petition claimed that the statute of limitations for contesting a will was tolled because he was chronically mentally ill and suffered from a schizo-affective disorder at the time of his mother's death and during the four-month notice period.

On June 26, 1989, defendant moved to dismiss plaintiff's petition to set aside the will on the ground that it was not filed within four months from the date of second publication of the notice of admission of the will to probate as required by section 633.309. The district court granted defendant's motion and dismissed plaintiff's petition. Prior to dismissal, Pamela as executor sought and received an ex parte order authorizing her to employ counsel to defend the will contest action and to pay for these services with estate assets. Plaintiff moved to set aside this order. The district court overruled plaintiff's motion.

On appeal, plaintiff claims that (1) published notice of the time to contest the will is insufficient to meet established due process standards if a known heir-at-law will have his property interest adversely affected;[2] (2) the amendment of Iowa Code section 633.304, effective July 1, 1989, requires the executor, on a continuing basis, to give actual notice to interested parties of the four-month limitation period for contesting a will; (3) the order admitting the will to probate is a judgment that requires the special procedures of Iowa Rule of Civil Procedure 13 governing a defense by an incompetent; (4) Iowa Code section 633.410 (1985) provides an exception to the four-month limitation period for claimants entitled to equitable relief; and (5) no just cause exists for payment of the executor's attorney fees out of estate assets.

I. *Published notice and due process.* Under our statutory scheme for probating wills in 1986, the clerk of the district court had discretionary authority to admit a decedent's will to probate, after the filing of a petition and upon proof of execution of the will, without requiring that notice be given of the hearing. Iowa Code § 633.293 (1985). On admission of the will, the appointed executor was required to publish notice of probate for two consecutive weeks in a newspaper published within the county in which the estate was pending. Iowa Code § 633.304 (1985). The purpose of publication was to advise creditors and persons seeking to contest the will that any actions or claims must be filed within four months of the second publication date or be forever barred. *Id.* Any action to contest or set aside the will was barred unless filed within the four-month time period. Iowa Code § 633.309 (1985).

Plaintiff concedes that defendant as executor complied with the 1986 statutory procedures governing notice. However, plaintiff urges that, as a known heir, his rights to contest the will cannot be extinguished by giving only published notice. In support of his contention that the published notice given was insufficient, plaintiff relies on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct.

---

1. The notice published stated that "[a]ny action to set aside the will must be brought ... within four months from the date of the second publication of this notice, or thereafter be forever barred."

2. We do not discuss the issue of plaintiff's status as a devisee under a prior will because this issue was never raised.

652, 94 L.Ed. 865 (1950), and *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

*Mullane* involved the settlement of trust accounts in which a trustee gave only published notice to trust beneficiaries. The Supreme Court held that since the settlement would affect the property rights of beneficiaries, known or reasonably ascertainable by the trustees, notice must be served on the beneficiaries in a manner reasonably calculated to apprise them of the settlement proceedings and provide an opportunity to be heard. *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. Soon thereafter, we held that the *Mullane* decision voiding published notice for a lack of due process was distinguishable and not applicable to published notice of a will probate proceeding. *In re Pierce's Estate*, 245 Iowa 22, 25, 60 N.W.2d 894, 897 (1953).

In *Pierce*, we distinguished a probate proceeding from the trust settlement in *Mullane*. Unlike the governing statute in this case, the 1953 statute in *Pierce* provided for published notice of a hearing on the probate of a will. *Id.* at 24, 60 N.W.2d at 896. We reasoned that, unlike the final adjudication of the trust beneficiaries' rights in *Mullane*, the property rights of heirs contesting a will were barred by the limitation period rather than by admission of the will to probate following published notice. *Id.* at 25, 60 N.W.2d at 897. Other jurisdictions have similarly distinguished *Mullane* by reasoning that the statute of limitations operates to automatically bar claims in probate proceedings without a final adjudication of a will contestant's rights and held that due process was not violated by giving published notice to creditors. *Estate of Busch v. Ferrell–Duncan Clinic, Inc.*, 700 S.W.2d 86, 89 (Mo.1985); *In re Estate of Fessler*, 100 Wis.2d 437, 447–48, 302 N.W.2d 414, 419–20 (1981).

The perception in most state jurisdictions that published probate notices passed the test of due process was shattered when the Supreme Court applied the *Mullane* doctrine to probate proceedings in *Pope*. On April 19, 1988, the Supreme Court, in an eight-to-one decision, reversed an Oklahoma ruling which adopted the theory in *Busch* and *Fessler*. *Pope*, 485 U.S. at 491, 108 S.Ct. at 1348, 99 L.Ed.2d at 579. The Court ruled:

We hold that Oklahoma's nonclaim statute is not a self-executing statute of limitations. Rather, the statute operates in connection with Oklahoma's probate proceedings to "adversely affect" appellant's property interest. Thus, if appellant's identity as a creditor was known or "reasonably ascertainable," then the Due Process Clause requires that appellant be given "[n]otice by mail or other means as certain to ensure actual notice."

*Id.* (citing *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180, 188 (1983)).

In this case, defendant attempts to distinguish *Pope* by identifying differences between creditors and heirs who are contestants. Defendant urges that heirs are likely to know of decedent's death and be placed on inquiry notice of a possible hearing on the probate of decedent's estate. Defendant urges that under these circumstances published notice is reasonable and satisfies due process.

We are tempted to accept defendant's argument, especially if we consider that the probate notice procedures in this rural state have worked efficiently and have not been significantly criticized. In *Mullane*, the Court discussed balancing the "interest of the State [against] the individual interest sought to be protected by the Fourteenth Amendment." 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. In *Pope*, the Court stated: "The focus is on the reasonableness of the balance, and, as *Mullane* itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances." 485 U.S. at 484, 108 S.Ct. at 1344, 99 L.Ed.2d at 575. In the case of a known or reasonably ascertainable creditor, the Court balanced the interest of the state in achieving the expeditious resolution of a probate proceeding against the interest of a creditor. The Court concluded that the requirement of actual notice is not so cumbersome as to unduly

hinder "the dispatch with which probate proceedings are conducted." *Id.* at 490, 108 S.Ct. at 1347, 99 L.Ed.2d at 578–79.

In *Pope*, the Court did not extend its ruling beyond creditors of an estate. The rationale for this determination, however, should also apply to other interested parties, especially parties whose rights may be precluded by published notice. The protection *Pope* offers to creditors' interests raises the question of whether the interest of heirs-at-law should be similarly protected. A noted scholar's comments on *Pope*'s application to our decision in *Pierce* seem to answer this question affirmatively as follows: "The Court's reasoning could easily be applied to a statute purporting to have the same effect on the right of an interested person to contest or set aside the probate of a will." S. Kurtz, 1 *Kurtz on Iowa Estates* § 4.9, at 129 (2d ed. 1989). Another scholar suggests that actual notice must be given to heirs if "there is some indication that there is a legitimate cause of action for the revocation of probate of the will of the decedent." Allison, *Due Process Requirements in Estate Administration: More Than the Law Allows?*, 10 Prob.L.J. 1, 45–46 (1990).

■ Our analysis causes us to conclude that the differences between creditors and heirs-at-law are not great enough to support a different notice rule. In the present case, the plaintiff lives nearby and knew of the death of his mother.[3] In many estates, however, the heirs-at-law may not be aware of the death and estate proceedings. In *Pope*, the Court reasoned that an executor with a beneficial interest in an estate has little inclination to call attention to the potential expiration of the time period for filing a creditor's claim. *Pope*, 485 U.S. at 489, 108 S.Ct. at 1347, 99 L.Ed.2d at 578. Similarly, a will contest action may nullify a will; therefore, an executor with a beneficial interest in an estate has even less

incentive to notify a disinherited heir. Moreover, identifying heirs is an easier task than ascertaining creditors. In balancing these considerations against the State's interest in expeditious probate proceedings, we conclude that due process requires an executor to give notice by mail to all known or reasonably ascertainable heirs-at-law of the proceedings and time periods for filing claims.

■ Defendant presents an alternate argument. She contends that even if we adopt the *Pope* doctrine, the ruling should not be applied retroactively to divest her of vested rights. In support of this contention, she cites *Hanesworth v. Johnke*, 783 P.2d 173 (Wyo.1989), which held that *Pope* did not apply retroactively to probate proceedings which were finalized before the date *Pope* was decided. *Id.* at 177. Plaintiff, on the other hand, maintains that other jurisdictions have applied the *Pope* doctrine retroactively.

■ Certain principles guide our consideration of whether a decision is to be applied retroactively to similar cases. Judicial decisions, including overruling decisions, generally operate both retroactively and prospectively. *Beeck v. S.R. Smith Co.*, 359 N.W.2d 482, 484 (Iowa 1984). In determining the issue of retroactive application of judicial decisions, we do not examine constitutional considerations. *Id.* Rather, we apply the three-part test that we relied upon in *Beeck* which is set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971), as follows:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by

---

**3.** If plaintiff had actual notice of the probate proceedings, further notice may not be necessary. *See In re Estate of Malone*, 198 Ill.App.3d 960, 963, 145 Ill.Dec. 60, 63, 556 N.E.2d 678, 681 (1990) (claimant who had actual knowledge of decedent's death and estate proceedings during statutory period could not claim due process

violation based on published notice); *Highway & Transp. Comm'n v. Myers*, 785 S.W.2d 70, 74–75 (Mo.1990) (creditor who had actual notice of estate pendency but failed to meet time requirements is not deprived of due process by published notice).

deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* (citations omitted).

In *Hanesworth,* the Wyoming court denied the retroactive application of *Pope* to final probate proceedings based on its application of the three-part *Chevron* test. It concluded that the first factor, the establishment of a new principle of law, was satisfied because the *Pope* decision addressed a question of first impression and acknowledged rejection of a previous practice widely adopted by state legislatures and courts. *Hanesworth,* 783 P.2d at 177. The court reasoned that even though the second factor might be satisfied because the purpose and effect of retroactive application of *Pope* may further due process, it concluded that "the benefits of avoiding hardships created by retroactivity is an ample basis for nonretroactive application." *Id.* Considering the third factor, the court indicated that the retroactive application of *Pope* could cause the disturbance of many established property rights. *Id.*

Plaintiff argues that *Hanesworth* can be distinguished from this case. Specifically, he argues that the probate proceedings in *Hanesworth* were closed prior to the *Pope* decision but that the estate is still open in this case. He urges that we follow the decision of the Kansas court in *In re Estate of McDowell,* 245 Kan. 278, 777 P.2d 826 (1989). In *McDowell,* notice was published pursuant to statute and the period for filing claims expired in February 1988, approximately two months before *Pope* was decided. *Id.* at 279, 777 P.2d at 828. The day after *Pope* was decided, the claim-

ant filed a petition for allowance of a claim, and raised the question of whether the *Pope* decision should be applied retroactively. *Id.* The Kansas court concluded that retroactive application of *Pope* did not result in inequities, significant hardships, or disruption on the basis that no funds had been distributed in the estate and no real estate titles would be disturbed. *Id.* at 282, 777 P.2d at 829–30.

Plaintiff also cites, and we have found, other cases that have adopted the *Pope* notice rule in probate cases. *In re Estate of Kopely,* 159 Ariz. 391, 394, 767 P.2d 1181, 1184 (Ct.App.1988); *Public Health Trust v. Estate of Jara,* 526 So.2d 745, 745–46 (Fla.Dist.Ct.App.1988); *Stewart v. Farrel,* 131 N.H. 458, 466, 554 A.2d 1286, 1291 (1989); *In re Estate of Santoro,* 572 A.2d 298, 301 (R.I.1990). In all of these cases, the issue of due process was raised and pending at the time *Pope* was decided. We agree that these cases were appropriately decided under the *Pope* doctrine. In this case, the issue was not raised or pending until over a year past the date of the *Pope* decision. We believe that this fact distinguishes the present case from the cases that have applied *Pope* to probate proceedings.

Furthermore, we think that this case can be distinguished from *McDowell.* In *McDowell,* the claim was filed two months after expiration of the statutory deadline and one day after *Pope.* The Kansas court held that application of *Pope* would not result in inequities or significant hardship. *McDowell,* 245 Kan. at 282, 777 P.2d at 829.

In this case, the time period for filing a will contest action had expired approximately fifteen months before the *Pope* decision and plaintiff did not file his action for another thirteen months. This twenty-eight month delay standing alone suggests substantial hardship and disruption to the probate proceeding. Moreover, we question the examination of probate proceedings on a case-by-case basis to determine if application of *Pope* would result in inequities, significant hardships, or disruption.

*See id.* at 282, 777 P.2d at 829–30. Such a determination is difficult and problematic. Once the time period for filing a will contest action has elapsed, we believe that will proponents, title examiners, and others affected have a right to rely on the finality of the will provisions.

All parties in the present case certainly believed that the four-month time limitation in section 633.309 had settled the validity of decedent's will. As executor, defendant was empowered to sell and dispose of any of decedent's property without the necessity of a court order. As a devisee, defendant was entitled to possession of the property; however, for purposes of estate administration, defendant's possession was subject to her position as executor and the court's control. Iowa Code § 633.350 (1985). To apply the *Pope* decision retroactively to all estates that were open on April 19, 1988, without consideration of the expiration of the time limitation for contesting wills, is inequitable to defendant and any other party that may have relied on the four-month limitation period for contesting a will.

Furthermore, in *Pierce*, we recognized that our notice-by-publication provision was valid and enforceable. We believe that the consequences of applying *Pope* retroactively could produce inequitable results. Consequently, we would only apply *Pope* retroactively to those cases in which: (1) heirs have raised the issue of the invalidity of the notice on due process grounds prior to April 19, 1988; or (2) the time period for filing a will contest action had not expired on April 19, 1988.

Consequently, we hold that the ruling in *Pope* that due process may invalidate notice given solely by publication is not to be applied retroactively in this case.

II. *Amendments to Iowa Code sections 633.304 and 633.309.* Plaintiff claims that amendments to Iowa Code sections 633.304 and 633.309, effective July 1, 1989, require the executor to give actual notice to interested parties of the time limitation for contesting a will. A pertinent portion of the language added to section 633.304 is as follows:

and at any time during the pendency of administration that the executor has knowledge of the name and address of a person believed to own or possess a claim which will not or may not be paid or otherwise satisfied during administration, provide by ordinary mail to each such claimant at the claimant's last known address, and as soon as practicable give notice, except to any executor, by ordinary mail to the surviving spouse, each heir of the decedent and each devisee under the will admitted to probate whose identities are reasonably ascertainable, at such persons' last known addresses ...

1989 Iowa Acts ch. 35, § 3. Section 633.-309 was amended to change the time for contesting or setting aside a will to the later to occur of four months from the date of second published notice or one month following the mailing of notice. *Id.* § 5.

Plaintiff filed his will contest on June 5, 1989, more than two years past the expiration of the former four-month limitation period, but almost one month before the effective date of the amendments. These facts raise several questions regarding whether the new mailed-notice requirement of these statutory amendments: (1) revives a will contest claim previously barred pursuant to the limitation period of "four months from the date of second publication of notice ..." in pre-amended Iowa Code section 633.309; (2) applies to an estate which was pending on July 1, 1989, the effective date of the amendments; (3) operates retroactively to invalidate published notice already completed pursuant to pre-amended section 633.304; and (4) precludes operation of the four-month time limitation in section 633.309.

▇▇ A review of the case law reveals the following general rule that an Indiana court summarized as follows:

A general rule with respect to statutes of limitations is that the period of limitation in effect at the time suit is brought governs in an action even though it may lengthen or shorten an earlier period of limitation.... However, another general rule ... is that if plaintiff's suit was

barred by the running of a statute of limitations prior to the extension of the limitation period, the subsequent statute cannot revive defendant's liability.

*In re M.D.H.,* 437 N.E.2d 119, 130 (Ind.Ct. App.1982). This general rule has been followed and further explained by this court and federal courts applying Iowa law. Previously, we have held that the statute of limitations in effect at the time the cause of action accrues is controlling and that the repeal or amendment of a statute of limitations cannot act retrospectively to revive actions previously barred under a prior statute in the absence of express legislative intent. *Secrest v. Galloway Co.,* 239 Iowa 168, 172, 30 N.W.2d 793, 796 (Iowa 1948); *Tischer v. City of Council Bluffs,* 231 Iowa 1134, 1149, 3 N.W.2d 166, 174 (Iowa 1942); *McDonald v. Jackson,* 55 Iowa 37, 38–39, 7 N.W. 408, 409 (1880); *Thompson v. Read,* 41 Iowa 48, 50 (1875); *Montgomery v. Chadwick,* 7 Iowa 114, 132–33 (1858). Federal courts applying Iowa law have not allowed retroactive application of an amended statute of limitations. *See In re Alodex Corp. Sec. Litig.,* 392 F.Supp. 672, 680–81 (S.D.Iowa 1975), *aff'd,* 533 F.2d 372 (8th Cir.1976); *Keen v. Mid–Continent Petroleum Corp.,* 63 F.Supp. 120, 128 (N.D.Iowa 1945), *aff'd,* 157 F.2d 310 (8th Cir.1946).

One reason why most courts refuse to apply statutory amendments retroactively is that the expectations of the parties are already set by the partial expiration of a previous statute of limitations. *See Feest v. Allis–Chalmers Corp.,* 68 Wis.2d 760, 764, 229 N.W.2d 651, 653 (1975). We have also reasoned that statutory amendments should not change conditions and protections afforded the parties by prior enactments. *Thompson,* 41 Iowa at 50.

■ If this case presented only the issue of decreasing or increasing the time period for filing a will contest action, then the case law discussed above would bar plaintiff's will contest action. However, plaintiff urges that sections 633.304 and 633.309 were also amended to require mailed notice to all heirs of the decedent. He claims the amendments requiring mailed notice is a procedural-remedial change that should be applied retrospectively to give plaintiff an entirely new cause of action and a new limitation period. Stated differently, the issue is whether the failure to provide plaintiff with mailed notice after July 1, 1989, the effective date of the new mailed-notice requirement and when the estate was still open, abrogates a "previously barred claim" in terms of the case law discussed previously and requires new notice. The district court rejected plaintiff's contention and held that the statutory amendments neither required defendant to give mailed notice nor created a new limitation period.

Plaintiff urges that the new language, "at anytime during the pendency of administration," in the amendment to section 633.304 applies to heirs and creates a continuing duty on the part of defendant to give plaintiff actual notice by mail of the time limitation for commencement of a will contest action. The quoted language is contained in the clause relating to claims. However, the next clause in the amendment relates to providing notice to heirs and is prefaced with the language, "as soon as practicable." We believe that the legislature's inclusion of different modifying language in the clauses governing claimants and heirs reveals the legislature's intention that creditors of an estate be treated differently than heirs for the purposes of notice.

Clearly, the purpose of the legislature's amendment of section 633.304 is to increase due process in light of *Pope,* which only applied to creditors. In response to *Pope,* this court adopted Iowa Rule of Probate Procedure 7 which we made applicable to all estates pending on or after its effective date, September 1, 1988. As we will discuss in this and a subsequent division, rule 7 provided for written notice to creditors and imposed a thirty-day time limit from the date of mailing to file a claim. Section 633.304 legislatively adopted the procedure and thirty-day time limit from rule 7. Thus, we believe that the legislature intended the language "at any time during the pendency of administration" to apply

only to creditors. Furthermore, we believe that the legislature never intended to impose a requirement that new notice be given to heirs in estates pending prior to July 1, 1989.

Our conclusion is supported by the statutory rule of construction that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Iowa Code § 4.5 (1985). Another statutory rule of construction provides:

The ... amendment ... does not affect:

1. The prior operation of the statute or any prior action taken thereunder;

2. Any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder....

Iowa Code § 4.13 (1985). At the time this action was commenced in June 1989, plaintiff's right to bring an action had already been cut off by operation of the four-month limitation period in the former, pre-amended section 633.309. In this case, we do not believe that the legislature intended that the statutory amendments to sections 633.-304 and 633.309 should alter rights previously acquired by the parties. *See State v. Simmons,* 290 N.W.2d 589, 594 (Iowa), *cert. denied,* 449 U.S. 842, 101 S.Ct. 123, 66 L.Ed.2d 50 (1980); *In re Estate of Hoover,* 251 N.W.2d 529, 531 (Iowa 1977).

■ III. *Iowa Probate Rule 7.* Plaintiff claims that Iowa Probate Rule 7, which this court promulgated and expressly applied to "all estates pending on or after its effective date [September 1, 1988]," also supports his claim of entitlement to mailed notice and a disregard of the existence of his previously barred will contest action. Rule 7 required that "[a]ll notices required to be published by Iowa Code ... 633.304 ... shall likewise be sent by ordinary mail to all known or readily ascertainable creditors...." This rule was applicable from September 1, 1988, until replaced by the statutory amendments which became effective July 1, 1989. This rule refers only to creditors, not to heirs-at-law or any other noncreditor party. Plaintiff is an heir of the decedent, not a creditor. Thus, plaintiff's argument has no merit.

IV. *Applicability of Iowa Code section 633.410 and Iowa Rule of Civil Procedure 13.* Iowa Code section 633.410 (1985) provides as follows:

All claims against a decedent's estate, other than charges, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, are forever barred against the estate, the personal representative, and the distributees of the estate, unless filed with the clerk within four months after the date of the second publication of the notice to creditors ... This section does not bar claimants entitled to equitable relief due to peculiar circumstances.

Plaintiff contends that this section provides an exception to the four-month statute of limitations in section 633.309 and entitles him to equitable relief due to peculiar circumstances. He claims that under section 633.410 his mental illness constitutes "peculiar circumstances" and that the term "claimant" encompasses heirs. We disagree.

■ The word "claim" generally refers to debts or demands against the decedent which might have been enforced against him during his lifetime by personal actions for the recovery of a sum of money. *See Superior Elec. Co. v. Burski,* 24 Conn. Supp. 446, 449, 193 A.2d 898, 899 (Super.Ct.1963) (defining "claims" against decedent's estate as debts or demands of pecuniary nature which could have been enforced during decedent's lifetime); *In re Iverson,* 249 Minn. 156, 160, 81 N.W.2d 701, 704 (1957) (term "claims" in statute has no application to claims arising out of administration of estate, such as for distributive shares of estate); 31 Am.Jur.2d *Executors and Administrators* § 603, at 305 (1989) (stating that word "claims" refers to debts or demands for which money judgment can be rendered). In this case, plaintiff's claim is for a share of decedent's estate, not for a pre-existing debt owed him during decedent's lifetime.

Iowa Rule of Civil Procedure 13 likewise does not support plaintiff's claim. Rule 13 provides as follows:

No judgment without a defense shall be entered against a party then a minor, or confined in a penitentiary, reformatory or any state hospital for the mentally ill, or one judicially adjudged incompetent, or whose physician certifies to the court that he appears to be mentally incapable of conducting his defense. Such defense shall be by guardian ad litem....

Plaintiff claims that the order admitting the will to probate cannot be final without the special procedures allowed by rule 13. We do not believe that rule 13 aids plaintiff. No judgment has been entered against plaintiff. Instead, expiration of the limitation period in Iowa Code section 633.-309 (1985), has made plaintiff unable to prosecute his will contest action and caused the dismissal of his action.

V. *Payment of executor's attorney fees out of the estate pursuant to Iowa Code section 633.315.* Finally, plaintiff challenges the court order allowing the defendant-executor's employment of counsel to defend this action. We have determined that the trial court correctly dismissed plaintiff's will contest action. Consequently, plaintiff has no interest in the estate and no standing to object to the employment of counsel or the payment of attorney fees out of the estate. Therefore, we need not address the issue.

VI. *Summary.* In summary, we hold that plaintiff's cause of action was barred by the time period prescribed in Iowa Code section 633.309 (1985). Neither the ruling in *Pope* nor later statutory amendments alter this time bar to plaintiff's action. We need not address the appointment of an attorney and the payment of attorney fees out of the estate. Consequently, we affirm the district court's dismissal of plaintiff's action.

AFFIRMED.

CARTER, J., takes no part.